**Lillian M. MATISE, as personal representative of Granville C. Matise, Deceased, Appellant,**

**v.**

**AMERICAN FOREIGN STEAMSHIP CO., Appellee.**

**No. 72–1345.**

United States Court of Appeals, Ninth Circuit.

March 8, 1974.

As Amended on Denial of Rehearing April 4, 1974.

Eric J. Schmidt (argued) San Francisco, Cal., for appellant.

John A. Flynn (argued) Graham & James, San Francisco, Cal., for appellee.

Before MERRILL and ELY, Circuit Judges, and EAST,* District Judge.

## OPINION

ELY, Circuit Judge:

This appeal arises from a suit brought by Granville C. Matise,[1] a seaman, against American Foreign Steamship Corporation, in which Matise alleged that $510.00 of his earned wages had been unlawfully withheld from him. He sought the recovery of these wages and claimed the double wage penalty allowed to seamen for wages withheld without sufficient cause.[2] The District Court, in a trial without jury, found that there was no unlawful withholding and entered judgment for the shipowner. We reverse.

Briefly, the facts of the case are these: Matise signed articles of employment as an oiler for a foreign voyage aboard the S.S. American Hawk, appellee's vessel, on January 11, 1969 in Long Beach, California. He was discharged for good cause on March 19, 1969 in Saigon, South Vietnam, in the presence of the ship's captain, the United States Vice Consul, and two United States Coast Guard officials. The captain was advised by the Vice Consul and Coast Guard officials that the shipowner did not have a duty to pay the cost of transportation to repatriate Matise, since his discharge was for good cause. These officials were not acting within their official authority in so advising the ship's captain. The shipowner was obliged by treaty and by the laws of the government of South Vietnam to remove all persons brought to South Vietnam by the ship. At that time, however, South Vietnam prohibited American seamen from carrying United States currency ashore and required that the ship's safe containing currency be sealed. Thus, Matise could not simply be paid the wages that were due him and put

---

* Honorable William G. East, Senior United States District Judge, District of Oregon, sitting by designation.

1. Matise died during the pendency of his suit. The State of Maryland appointed Lillian M. Matise as his Personal Representative, and, pursuant to stipulation, the District Court substituted her as the plaintiff in the action.

2. 46 U.S.C. § 596 reads, in pertinent part:
   "The master or owner of any vessel [making foreign voyages] . . . shall pay to every seaman his wages . . . within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens . . . Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court . . . ."

ashore. Furthermore, an airline ticket for transportation to the United States from Saigon could only be purchased with United States currency. With the approval of the Vice Consul, the ship's captain was granted permission by South Vietnamese Customs to break the seal on the vessel's safe and withdraw the amount necessary to purchase an airline ticket to the United States, $510.-00. The ship's captain then purchased, or arranged for his agent to purchase, the ticket, which was given to Matise. In the presence of the Vice Consul, the two Coast Guard officials, and the ship's captain, Matise was given a Wage Voucher signed by the captain in the amount of $118.45. The cost of the airline ticket had been deducted from the full amount of wages due Matise, and $118.45 was the remainder. While there is some dispute as to whether or not the seaman signed the Wage Voucher while in Saigon, the Voucher indicates on its face that it was signed by Matise in San Francisco. After arriving in the United States, Matise was signed off the ship's articles by the U. S. Shipping Commissioner in San Francisco. The Commissioner required Matise to sign a release as a condition to the latter's receiving any part of his wages. Matise took the release and the Wage Voucher as prepared by the captain to the shipowner, which in turn required Matise to sign the Voucher in order to receive any of his wages. On these facts, the District Court found that the $510.00 used to purchase the airline ticket to repatriate Matise was a partial payment of wages and that there was therefore no unlawful withholding.

Here, the questions are: (1) Was there an unlawful withholding of Matise's wages? (2) If so, was the unlawful withholding without sufficient cause?

■ As a general principle of maritime law, when a seaman is discharged for good cause in a foreign port, the seaman's misconduct is, in effect, a breach of the seaman's contract with the ship and terminates the shipowner's ob-ligation to bring the seaman home. Norris, The Law of Seamen (3rd Ed.) Vol. 1, Section 420 (1970); Ward v. United States, 66 F.Supp. 237 (D.C. 1946). Furthermore, by statute, the wages of a seaman on a foreign voyage become due and payable within twenty-four hours after the cargo has been discharged or within four days after the seaman has been discharged, whichever first occurs. 46 U.S.C. § 596. Failure to pay the seaman within the statutory time limit, without sufficient cause, subjects the shipowner to double wage penalties. 46 U.S.C. § 596.

■ The appellee argues that since maritime common law only requires a shipowner to pay wages to a seaman discharged for cause, the ship's captain effectively paid Matise part of his wages by buying him a ticket home. The appellee's argument cannot stand in view of the far-reaching protection of seamen's wages which is now provided by statute. As the Supreme Court said in Isbrandtsen v. Johnson, 343 U.S. 779, 784, 72 S.Ct. 1011, 1015, 96 L.Ed. 1294 (1952):

"Congressional legislation now touches nearly every phase of a seaman's life . . . . It deals specifically with his shipping articles and the payment to him of his wages . . . . It insures the payment to him of the balance of [his] wages upon completion of his voyage or shortly after discharge. It deals explicitly with the final payment of wages."

The shipowner in this case did not pay part of Matise's final wages in Saigon, as it argues, since the $510.00 was not paid to Matise but to an airline. Although the appellee contends that the transportation money spent on Matise's alleged behalf is equivalent to the payment of wages to Matise, the applicable statutes explicitly and unequivocally provide that the wages due are to be paid *to the seaman*, 46 U.S.C. §§ 596–597. Furthermore, the shipowner here was acting to some extent in its own behalf, in view of its legal obligation to remove

all persons, including a discharged seaman such as Matise, whom it had transported to South Vietnam. Even, however, had the money been spent entirely for the benefit of Matise, it could not be treated as a partial payment of his wages and thereby deducted from the total amount of wages that he had earned and to which he was entitled. In Gonzales v. Isthmian Steamship Co., 1958 A.M.C. 97 (E.D.Pa.1957), the shipowner paid for a lawyer and incurred related expenses for the benefit of a seaman held in jail on charges of assault. Although the seaman had signed an agreement with the ship allowing the expenditures to be paid as an advance on his wages, the District Court refused to allow the shipowner to deduct the amount of the expenses from the seaman's wages. The Court said: ". . . except as expressly provided by law, a seaman cannot give up any right to wages, or any remedy for the recovery of wages, even by agreement." 1958 A.M.C. at 105. In so writing, the court followed the rule of Isbrandtsen v. Johnson, *supra,* which held that only those specific deductions and set-offs designated by statute could be withheld from a seaman's wages. In *Isbrandtsen* the Supreme Court held that regardless of the validity of the shipowner's claim against the seaman, the shipowner may not withhold the seaman's wages to satisfy those claims. The Supreme Court wrote:

"Congress has gone so far in expressly listing such deductions and set-offs that it is a fair inference that those not listed may not be made. It thus remains for the courts to determine only what are the deductions or set-offs for derelictions of duty that are listed by Congress, rather than to determine which of the deductions or set-offs once known to the general maritime law Congress has failed to exclude. Congress, in effect, has excluded all of them except those which it has listed affirmatively." 343 U.S. at 789, 72 S.Ct. at 1017.

The statutory scheme enacted by Congress does not provide for set-offs or deductions for return transportation expenses, and *Isbrandtsen* has been applied to bar the deduction of repatriation costs from a seaman's wages. In Schwark v. S. S. Rio Macareo, 249 F. Supp. 375 (E.D.La.1966), a seaman was discharged for good cause in a foreign port, just as was Matise in our case. An agreement in the articles of the ship provided that the ship was not obligated to pay the cost of repatriating any crewmember discharged for cause. Nevertheless, the court held that as a matter of law, the ship could not offset the cost of repatriating the seaman against his wages, even though the court found that the ship had a valid claim against the seaman for that amount. *See also* Swain v. Isthmian Lines, Inc., 360 F.2d 81 (3d Cir. 1966), wherein the shipowner was required to restore wages and pay a double wage penalty for withholding from a seaman's wages the cost of medical treatment paid by the ship, a cost for which the seaman was admittedly liable; Keen v. United States, 199 F. 2d 151 (2d Cir. 1952), wherein a shipowner who had deducted from a seaman's wages the cost of medical treatments and transportation to the United States was assessed double penalty wages; Shilman v. United States of America Shipping Administration, 164 F.2d 649 (2d Cir. 1947), cert. denied, 333 U.S. 837, 68 S.Ct. 608, 92 L.Ed. 1122 (1948), wherein the Second Circuit held that a seaman discharged in a foreign port is entitled to receive all his earned wages, without any deductions whatsoever except those specifically authorized by statute; Ventiadis v. C. J. Thibodeaux & Co., 295 F.Supp. 135 (S.D.Tex. 1968), wherein it was held that although a seaman had signed a release, left the ship at his own request, and was flown at company expense to his home port in Greece, he was nevertheless entitled to double penalty wages for the repatriation costs deducted from his wages.

The foregoing authorities make it clear that the shipowner, in deducting transportation costs from Matise's

wages, unlawfully withheld those wages within the meaning of 46 U.S.C. § 596. Furthermore, the case law has, for at least two decades, provided full notice to shipowners seeking to avoid the imposition of double wage penalties that only those deductions from wages that are allowed by statute are lawful. As the court remarked in Swain v. Isthmian Lines, Inc., *supra*:

"It has been eminently clear in the law, at the very least since the Supreme Court case of Isbrandtsen Co. v. Johnson in 1952 that a deduction from wages for medical expenses such as were incurred by appellee in the instant case is wrongful as falling outside the proper deductible instances . . . . This question, therefore has been closed for some time." 360 F.2d, at 83 (footnote omitted).

It is therefore clear that the shipowner in our case cannot claim that it had "sufficient cause" to withhold a portion of Matise's wages because of reliance on the general maritime law which did not require a shipowner to pay the cost of repatriating a seaman discharged for good cause. As we have previously indicated, this argument has been without merit since the Supreme Court decided Isbrandtsen v. Johnson, *supra*, over twenty years ago.

The only remaining question is whether the shipowner can avoid double wage penalties because Matise signed the Wage Voucher and mutual release before the shipping commissioner. Where, as here, a seaman has been compelled to sign a release and Wage Voucher in order to receive wages which the shipowner admits are due, the release has been set aside by the courts as having been executed under duress. In Prindes v. S. S. African Pilgrim, 266 F. 2d 125 (4th Cir. 1959), a seaman was logged two days' pay for failing to return to his ship one hour before the posted sailing time as his contract required. At the termination of the voyage the seaman was offered his earned wages minus the logged pay, but before he could receive *any payment* he was required by the ship to sign a Wage Voucher and a mutual release. The court, in holding that the Wage Voucher and release were invalid, declared: "It is well settled that a seaman is entitled to double wages or 'waiting time' under 46 U.S.C.A. § 596, if wages concededly due are tendered only upon condition that he will release disputed claims." 266 F. 2d at 127. And in Isthmian Lines, Inc. v. Haire, 334 F.2d 521 (5th Cir. 1964), the shipowner contended that the seaman's right to maintenance and cure monies was foreclosed because of a mutual release that the seaman had executed before the shipping commissioner when his earned wages were paid. The Fifth Circuit, in affirming the District Court's judgment in favor of the seaman emphasized:

"The Shipping Commissioner is no roving arbiter of all of the disputes between ship and seaman. He is given no power to resolve unliquidated demands for cure, for maintenance . . . . Moreover, as a principle of ordinary law —land-locked, seagoing, or amphibious —a release for payments for amounts admittedly due lacks consideration." 334 F.2d at 523. *See* 46 U.S.C. § 597, which provides that any court having jurisdiction may on good cause shown set aside a release signed before a shipping commissioner and take such action as justice may require. *See also* Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942), and Pacific Mail S. S. Co. v. Lucas, 258 U.S. 266, 42 S.Ct. 308, 66 L.Ed. 614 (1922).

Matise was misinformed in Saigon by the Vice-Consul, the two Coast Guard officers, and his captain by their representations to him that he could "be forced to spend his own money to send him back home." Furthermore, he was compelled to sign the release and Wage Voucher in order to receive the remainder of his wages that admittedly were due. In these circumstances, we hold that neither the Wage Voucher nor the release

474

can in any manner be treated as a waiver by Matise of his claim or a factor tending to show that the shipowner had "sufficient cause" to withhold a part of Matise's wages.

Reversed.