# AMERICAN FOREIGN STEAMSHIP CO. *v.* MATISE

No. 74–966.   Argued October 14, 1975—Decided December 16, 1975

MARSHALL, J., delivered the opinion for a unanimous Court.

*Francis L. Tetreault* argued the cause for petitioner. With him on the brief was *John A. Flynn.*

*Eric J. Schmidt* argued the cause and submitted a brief for respondent.

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Granville C. Matise, a seaman, brought this suit alleging that upon his discharge from the S. S. *American Hawk,* petitioner, the ship's owner, withheld $510 in wages from him. Matise claimed that, pursuant to Rev. Stat. § 4529, as amended, 46 U. S. C. § 596, he was entitled to two days' pay for every day that payment of the $510 had been delayed.

Title 46 U. S. C. § 596 provides in relevant part:

> "The master or owner of any vessel [making foreign voyages] shall pay to every seaman his wages ... within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens . . . . Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court."

The parties to this case differ over the meaning of "sufficient cause" under § 596; they are in conflict, too, over whether the trial court can exercise any discretion in determining the amount of the award under § 596.[1] But we need not address either of these questions today. We hold simply that in this case the District Court correctly concluded that petitioner-shipowner never "refuse[d] or neglect[ed] to make payment" to Matise. This being so, petitioner incurred no liability under § 596.

I

Granville Matise was hired on January 11, 1969, as a seaman aboard the S. S. *American Hawk.* Between February 14 and March 19, 1969, there were five occasions on which the ship's master entered in the ship's log reports that Matise either was absent from his duty position or, because of intoxication, was unable to fulfill his normal responsibilities. On the first four occasions relatively minor penalties of the loss of several days' pay were imposed. On March 19, the date of the fifth log entry, the master decided that Matise should be discharged. With the ship docked in Saigon, South Vietnam, the master took Matise before the United States Vice Consul stationed in Saigon. The Vice Consul,

---

[1] While the Third and Ninth Circuits have found that the trial judge has no discretion in determining the amount of the penalty under § 596, *Swain* v. *Isthmian Lines, Inc.,* 360 F. 2d 81 (CA3 1966); *Escobar* v. *S. S. Washington Trader,* 503 F. 2d 271 (CA9 1974), cert. pending *sub nom. American Trading Transp. Co.* v. *Escobar,* No. 74–1184, the First, Second, Fourth, and Fifth Circuits have concluded that the length of time to which the penalty applies—and hence its amount—is subject to the discretion of the District Court. *Mavromatis* v. *United Greek Shipowners Corp.,* 179 F. 2d 310 (CA1 1950); *Forster* v. *Oro Navigation Co.,* 228 F. 2d 319 (CA2 1955), aff'g 128 F. Supp. 113 (SDNY 1954); *Southern Cross S. S. Co.* v. *Firipis,* 285 F. 2d 651 (CA4 1960), cert. denied, 365 U. S. 869 (1961); *Caribbean Federation Lines* v. *Dahl,* 315 F. 2d 370 (CA5 1963).

whose duty in such situations is to "inquire carefully into the facts and circumstances, and [to] satisfy himself that good and substantial reasons exist for a discharge," 22 CFR § 82.16,[2] agreed with the master that Matise's discharge was justified. He granted the discharge application without objection from Matise, and entered into the ship's log a notation stating that he "agreed to remove [Matise] from the vessel on grounds of misconduct at the Master's request and for the good of the vessel." The Vice Consul also advised the master that, because the discharge resulted from repeated instances of misconduct by Matise, petitioner was not obligated to pay for Matise's repatriation.[3]

Petitioner did, of course, have an obligation to pay Matise the wages that he had earned prior to his discharge. See 46 U. S. C. § 596. But payment in a form enabling Matise to secure transportation back to the United States was no easy matter. South Vietnamese law prohibited American seamen from carrying American currency ashore, and required that any ship's safe containing American currency be sealed while the ship was in port. An airline ticket to the United States, however, could be purchased only with American currency. Thus, Matise could not simply be put ashore with his wages and left there to secure transportation back to the United States for himself.[4]

---

[2] See also 46 U. S. C. § 682; 7 Foreign Affairs Manual § 526.2.

[3] Two Coast Guard officers with whom the master had earlier consulted concerning Matise's misconduct were also present and concurred in the Vice Consul's advice that there was no obligation of repatriation.

[4] South Vietnamese currency regulations were apparently not the only barrier to simply discharging Matise with his full wages in cash in Saigon. The Court of Appeals noted that South Vietnamese law also required the shipowner to guarantee the removal from the country of all persons whom it had transported to South Vietnam. 488 F. 2d 469, 471–472.

In order to resolve the resulting dilemma, Vietnamese Customs officials gave the ship's master special permission to break the seal on the ship's safe and to remove enough money to purchase an airline ticket to the United States. The ticket was purchased and given to Matise along with a wage voucher for $118.45—a sum which, as indicated on the voucher itself, represented the amount of the wages due him, less the $510 paid for the airline ticket.[5] When Matise arrived back in the United States, he signed off the ship's articles, executed a mutual release,[6] and, on March 24, 1969, received the $118.45 from petitioner.

Almost one year later Matise filed suit against petitioner in the United States District Court for the Northern District of California.[7] He claimed that petitioner had withheld from him $510 in wages, and that petitioner was liable to him for that amount and, as provided in § 596, for two days' pay for every day that payment had been delayed. The District Court rejected Matise's claim, finding that he had "consented to and approved the purchase of an airline ticket for his purposes with his money," and concluding that "[t]he purchase of that ticket under those circumstances constituted the

---

[5] Apart from the airline ticket expense, several deductions, none of them here at issue, were also reflected on the wage voucher.

[6] Such a release is required by 46 U. S. C. § 644. Once such a release is signed, it "shall operate as a mutual discharge and settlement of all demands for wages between the parties thereto, on account of wages, in respect of the past voyage or engagement," § 644, except that "any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require." § 597.

[7] Granville Matise died during the pendency of the suit. Lillian M. Matise, respondent in this case, was appointed by the State of Maryland to administer his estate. Pursuant to stipulation, the District Court substituted respondent as plaintiff in this action.

equivalent of payment of monies over to the seaman." Having found that the purchase of the airline ticket for $510 constituted a partial payment of wages, the District Court concluded that petitioner had not "refuse[d]. or neglect[ed]" to pay and had therefore incurred no liability under § 596.

The Court of Appeals for the Ninth Circuit reversed. 488 F. 2d 469 (1974). It read § 596 as requiring that wage payments be paid directly to the seaman, and held that the $510 paid to the airline without ever having passed through Matise's hands could not be regarded as a partial payment of wages. Citing this Court's indication. in *Isbrandtsen Co.* v. *Johnson,* 343 U. S. 779 (1952), that only deductions and setoffs for derelictions of duty specifically provided for by Congress could lawfully be deducted from a seaman's wages, the Court of Appeals concluded that since the statutory scheme does not provide for setoffs for return transportation expenses, the "withholding" here at issue was improper and was without "sufficient cause" under § 596.

On remand, the District Court assessed damages in the amount of $510 for the wages "wrongfully withheld" and $29,462 in penalties,[8] representing double wages calculated from March 24, 1969, four days after the discharge, until December 15, 1971, the date of the first District Court judgment in the case.[9] Petitioner's appeal from this assessment was dismissed by the Court of Appeals as frivolous, and this Court thereupon granted certiorari. 420 U. S. 971 (1975). We reverse.

---

[8] The District Court also held petitioner liable for interest on these sums, as well as for court costs in both the District Court and Court of Appeals.

[9] The District Court assessment was made in conformity with *Escobar* v. *S. S. Washington Trader.* See n. 1, *supra.*

## II

The threshold question in this case is whether petitioner's purchase and Matise's receipt of the airline ticket constituted a partial payment of wages. If it was a partial payment, then there was no refusal or neglect to pay wages and there can be no double-wage liability under § 596.[10] Only if the transaction was not a partial payment are we presented with the question whether the "withholding" of the $510 was without "sufficient cause" under § 596.

In *Isbrandtsen Co.* v. *Johnson, supra,* on which the Court of Appeals heavily relied, there was no question that what this Court was faced with was a refusal or neglect to make payment. There respondent, a seaman, had stabbed one of his shipmates while at sea. Over respondent's objection, the shipowner deducted from his wages amounts spent for the medical care and hospitalization of the shipmate. We held that because the deductions were not provided for in the relevant statutes,[11] they should not have been made—even though it might later have been determined that the shipowner had a valid claim for reimbursement against the respondent.

The situation before us today is quite different from that in *Isbrandtsen.* While the deductions in *Isbrandtsen* were made over the seaman's objection, the District Court in this case explicitly found that Matise "consented to and approved the purchase of an airline ticket for his purposes with his money." [12] Moreover, unlike

---

[10] Respondent conceded as much at oral argument before this Court. See Tr. of Oral Arg. 27, 31.

[11] 46 U. S. C. §§ 659, 663, 701, 707.

[12] The Court of Appeals rejected the District Court's finding that Matise had consented to the purchase of the airline ticket with part of the wages due him, in part because of its conclusion that Matise

the seaman in *Isbrandtsen,* Matise received a benefit from the petitioner's expenditure that he simply could not have obtained through being paid in cash.[13] Because of South Vietnamese currency regulations, it was only the procedure that was followed that allowed Matise to secure air transportation to the United States. Under such circumstances, it is evident that the shipowner did not refuse or neglect to make payment under § 596 as the shipowner in *Isbrandtsen* so clearly did;[14] rather, the

was "compelled to sign the release and Wage Voucher in order to receive the remainder of his wages that admittedly were due." 488 F. 2d, at 473. But there is nothing in the record to indicate that Matise's signing the wage voucher and release was the product of any such compulsion. Indeed, no claim is made that Matise registered any dissatisfaction whatsoever with either the form or amount of his wages until some months after signing the release. Nor was he the subject of any fraud or misrepresentation. See n. 14, *infra.* Accordingly, the District Court's finding that Matise had consented to and approved the form and amount of his wage payment was not clearly erroneous and should have been respected by the Court of Appeals.

[13] To the extent that the respondent in *Isbrandtsen Co.* v. *Johnson,* 343 U. S. 779 (1952), was ultimately liable for the expenses surrounding his shipmate's injury, he too could be said to have benefited from the shipowner's payment of those expenses. However, unlike the case before us today, this was a "benefit" that he could have secured for himself had he been paid the wages directly.

[14] Any suggestion that on Matise's discharge petitioner had a repatriation obligation to him independent of the obligation to pay wages is without merit. That this is so follows from respondent's concession that the discharge was validly based on Matise's misconduct. A shipowner's obligation to repatriate a seaman discharged in a foreign port depends on the circumstances of the discharge. For instance, there is a general obligation to repatriate seamen who, through causes other than their own misconduct, have been injured. See *Ladzinski* v. *Sperling S. S. & Trading Corp.,* 300 F. Supp. 947, 956 (SDNY 1969); *Miller* v. *United States,* 51 F. Supp. 924 (SDNY 1943); *The Centennial,* 10 F. 397 (ED La. 1881); 1 M. Norris, The Law of Seamen § 418 (1970). On the other hand, as

158

transaction in question constituted a partial payment of Matise's wages.

The Court of Appeals rejected petitioner's attempt to treat the giving of the plane ticket to Matise as a payment of wages. It viewed the purchase of the ticket as a payment to the airline, not to Matise, and observed that "the applicable statutes explicitly and unequivocally provide that the wages due are to be paid *to the seaman,* 46 U. S. C. §§ 596-597." 488 F. 2d, at 471 (emphasis in original). The Court was evidently relying at this point on the following language in § 596: "The master . . . shall pay *to every seaman* his wages . . . within four days after the seaman has been discharged . . . ." [15] (Emphasis added.)

the Court of Appeals recognized in this case, 488 F. 2d, at 471, there is no obligation to repatriate a seaman like Matise who has been discharged for misconduct. 1 Norris, *supra,* § 420. See *Aguilar* v. *Standard Oil Co.,* 318 U. S. 724, 731 (1943).

Nothing in *Isbrandtsen* suggests that when a seaman concedes that his discharge for misconduct is warranted, the shipowner must pay for the seaman's repatriation and only later claim reimbursement from him. It is true that *Isbrandtsen* indicated that, because of the importance of repatriation allowances to seamen, amounts not deductible from earned wages may not be deducted from a repatriation allowance that is owing to a seaman. 343 U. S., at 789 n. 12. But in this case, we are presented, not with a deduction from a repatriation allowance that was owed to Matise, but rather, because of the nature of Matise's discharge, with the *absence* of any obligation at all on the part of the shipowner toward Matise to repatriate him. The Vice Consul's advice to the master, see *supra,* at 153, that petitioner had no obligation—even of a temporary nature—to pay for Matise's return to the United States was correct. It follows that Matise's consent to partial payment was not, as the Court of Appeals indicated, 488 F. 2d, at 473, the product of misinformation.

[15] The Court of Appeals' reference to § 597 was apparently to the following language:

"*Every seaman* . . . shall be entitled to receive on demand from the master of the vessel to which he belongs one-half part of the

The Court of Appeals' conclusion that the "payment" went to the airline and not to Matise does not necessarily follow from the facts of this case. It could as easily be argued that "payment," albeit in the form of an airline ticket rather than cash, was made to Matise. But even under the Court of Appeals' characterization of the transaction, we are unwilling to say that the payment was precluded by the general language of § 596. A far more explicit statement would be required to bar such a payment under the peculiar circumstances of this case. The obvious concern of § 596 is that the shipowner not unlawfully withhold wages, and thereby unjustly enrich himself while wrongfully denying the seaman the benefits of his labor. In this case, there was neither unjust enrichment of the shipowner nor a denial of benefits to the seaman. The shipowner made in a timely manner all the expenditures for which it was obligated. And the seaman received full benefit from the $510 by consenting to have it applied in the fashion most useful to him—the purchase of an airline ticket.

Respondent advanced an alternative theory during oral argument to support the contention that petitioner neglected to make payment under § 596. Respondent argued that the master's failure to enter into the ship's logbook a notation that the $510 had been paid bars viewing the transaction as a partial payment of wages.

We find this argument unpersuasive. When crew members become liable for deductions from wages dur-

---

balance of his wages . . . at the time when such demand is made at every port where such vessel . . . shall load or deliver cargo before the voyage is ended . . . ." 46 U. S. C. § 597 (emphasis added).

For reasons identical to those presented with regard to § 596, we reject any reading of § 597 that bars the method of payment utilized in this case.

ing a ship's voyage, there is, it is true, a statutory requirement that "the master shall, during the voyage, enter the various matters in respect to which such deductions are made, with the amounts of the respective deductions as they occur, in the official log book." 46 U. S. C. § 642. As we have indicated above, however, the airline ticket transaction in this case is *not* a "deduction from" Matise's wages, but rather is itself a partial payment of wages. Section 642's terms do not apply to payments of wages. The shipowner therefore acted properly in doing no more than rendering Matise a complete wage voucher that clearly noted the purchase of the airline ticket.

### III

In reversing the decision of the Court of Appeals, we do not retreat from our view that the aim of § 596 is "to protect [seamen] from the harsh consequences of arbitrary and unscrupulous action[s] of their employers." *Collie* v. *Fergusson,* 281 U. S. 52, 55 (1930). In this case, there was no impropriety either in the discharge itself or in the payment of wages to Matise. Nor do we today compromise our holding in *Isbrandtsen* that "only such deductions and set-offs for derelictions in the performance of . . . duties shall be allowed against . . . wages as are recognized in the statutes." 343 U. S., at 787. We hold simply that, under the circumstances of this case, the transaction resulting in Matise's receipt of an airline ticket purchased with money owed to him as wages constituted a payment of wages. There was therefore no refusal or neglect to make payment under § 596.

The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*