Nathaniel THOMAS, Plaintiff-Appellant,

v.

SS SANTA MERCEDES and Prudential Lines, Inc., Defendants-Appellees.

Nos. 76–1189 and 76–1490.

United States Court of Appeals, Ninth Circuit.

March 31, 1978.

Eric J. Schmidt (argued), San Francisco, Cal., for plaintiff-appellant.

John A. Flynn (argued), San Francisco, Cal., for defendants-appellees.

Before BROWNING and WRIGHT, Circuit Judges, and TAYLOR, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Thomas, a seaman, recovered $1,221.36 from the defendant Prudential Lines, Inc. (Prudential or the Company) under 46 U.S.C. § 596, which imposes a double wage penalty on masters or owners who refuse or neglect to pay discharged seamen one-third of their earned wages at the time of discharge and the balance within four days thereafter.[1] The district court imposed the

---

* Senior District Judge, District of Idaho.

1. 46 U.S.C. § 596 provides in relevant part: The master or owner of any vessel . . . shall pay to every seaman his wages . . in case of vessels making foreign voyages . . . within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days pay for each and every day

penalty for the period May 14 to June 4, 1974.

Thomas appeals from that part of the judgment denying recovery from June 4 until October 18 and costs. He further contends the district court erred in not reopening the trial to consider newly discovered evidence.

The Company cross-appeals, contending that Thomas was not discharged until June 4 and that it was then prepared to pay him all of his wages. It asserts that the award for the period May 14 to June 4 should be vacated.

FACTS:

Prudential employed Thomas as a cook on the S.S. Santa Mercedes. While the ship was at Buenos Aires, the captain ordered Thomas to be examined by a shoreside physician who erroneously diagnosed an abnormal skin condition as secondary syphilis. On May 6, the captain relieved him of his duties and stopped his wages.

Thomas was put ashore in Valparaiso on May 14. The captain gave him a wage voucher for accrued wages of $384.00, and Prudential paid for his return to San Francisco. On June 4, Thomas presented the voucher for payment at Prudential's office in San Francisco. The paymaster instructed him to proceed to the United States Shipping Commissioner's office to sign off the vessel's articles and to sign a certificate of mutual release. Thomas left and did not return to the paymaster's office until October 18. He then presented the release certificate and received all wages due him.[2]

THE DUTY TO PAY UPON DISCHARGE:

Under 46 U.S.C. § 596, a seaman is entitled to one-third of his earned wages when discharged and the balance within four days thereafter. If a shipping company "refuses or neglects" to pay in accordance with § 596, it is liable to the seaman for double wages for each day that payment is withheld.

The first question is whether Thomas was discharged when he left the ship in Valparaiso, or when he signed off its articles in San Francisco.

■ In support of its claim that, as a matter of law, Thomas could not have been discharged in Valparaiso, Prudential cites statutory provisions requiring that a seaman who has signed shipping articles for a foreign voyage be discharged before an American consul, 46 U.S.C. § 682 (discharge in a foreign port), or a Shipping Commissioner, 46 U.S.C. § 641 (discharge in the United States). Prudential contends that there can be no discharge except under those provisions.

However, §§ 682 and 641 simply prescribe the requisites of proper discharge, and do not preclude a finding of discharge for purposes of the § 596 penalty in a case such as this. This application of the statutes is consistent with the different purposes for which they were enacted.

■ The statute requiring discharge before a consular official in a foreign port [46 U.S.C. § 682] was intended to benefit seamen, not owners, and seeks to protect against arbitrary discharge, or discharge for causes not warranted by practices under maritime law. *The Golden Sun,* 30 F.Supp. 354, 356 (D.C.Cal.1939). It aims to avoid a termination of employment without cause before it occurs.

■ The purpose of § 596 is to give the seaman funds on which to live when he is left ashore. *Mavromatis v. United Greek Shipowners Corp.,* 179 F.2d 310, 315 (1st Cir. 1949); *Shilman v. United States,* 164 F.2d 649, 650–51 (2d Cir. 1947), *cert. denied,* 333 U.S. 837, 68 S.Ct. 608, 92 L.Ed. 1122 (1948). Regardless of whether the seaman is discharged for cause or whether the discharge is effectuated before a consular official as

during which payment is delayed beyond the respective periods.

2. The court discredited Thomas' testimony that he had appeared at the paymaster's office on several occasions between June 4 and October 18 but was refused payment. His counsel moved to reopen the trial before judgment to present evidence that would purportedly impeach the credibility of the paymaster. That motion was denied.

required by § 682, the seaman needs the protection afforded by § 596 when his right to food and quarters on the vessel is terminated.

It is no answer, as Prudential claims, that it paid for Thomas' repatriation and medical expenses, for it was legally bound to do so. [46 U.S.C. § 683; 22 C.F.R. § 84.6(c)]. Performance of that duty did not vitiate Prudential's obligation to comply with the requirements of § 596.

## PLACE OF DISCHARGE:

Whether Thomas was discharged in Valparaiso is a question of fact. The district court did not expressly find that he was discharged when put ashore there. However, because it concluded that he was entitled to the penalty payment starting on that date, it necessarily found that he was discharged in Valparaiso within the meaning of § 596.[3]

This court will not disturb a district court's findings of fact unless they are clearly erroneous. Fed.R.Civ.P. 52(a); *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954). A finding is clearly erroneous only when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.' " *Id., citing United States v. Oregon State Medical Society,* 343 U.S. 326, 339, 72 S.Ct. 690, 96 L.Ed. 978 (1952), *and United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

## WHEN THE PENALTY ACCRUED:

When Thomas was separated from his ship in Chile, his duties and his accrual of wages had already ceased. His right to food and shelter on the vessel was terminated. On these facts, the district court could conclude Thomas was discharged on May 14. On the entire record, we cannot conclude that this finding was clearly errone-

ous. Because Prudential failed to pay one-third of the earned wages on May 14, it is liable for the double wage penalty from that date until June 4, when Thomas first presented his voucher for payment.

## WHEN THE PENALTY CEASES:

The second question is whether Prudential persisted in "refus[ing] or neglect[ing]," to pay Thomas his earned wages within the meaning of § 596 after June 4.

When Thomas asked to be paid on June 4, he was sent to the Shipping Commissioner to sign off the ship's articles and to obtain a certificate of mutual release. This customary procedure does not constitute a refusal or neglect to pay without sufficient cause. *Nelson v. Moore-McCormack, Inc.,* 201 F.Supp. 40 (S.D.N.Y.1961), *aff'd* 297 F.2d 936 (2d Cir. 1962).

After signing off and obtaining the release at the Commissioner's office, however, Thomas did not return for his pay until October 18. Although Prudential failed to pay his wages from June 4 to October 18, it did not refuse or neglect to pay. To require shipping companies to search out seamen to pay accrued wages is an unrealistic burden, one we refuse to impose. It is more reasonable to expect seamen to present themselves and their vouchers for payment. Prudential is therefore not liable for the double wage penalty for the period June 14 to October 18.

## DISALLOWANCE OF COSTS:

Thomas further contends that he should have been awarded costs even though he did not prevail on his entire claim. Under Fed.R.Civ.P. 54(d), a court shall award costs to the prevailing party, "unless [it] otherwise directs." Costs are generally awarded to the successful party even if he is not awarded his entire claim. *See* 6 *Moore's Federal Practice* ¶ 54.70[4].

---

3. There is conflicting language in the district court's findings of fact and conclusions of law. At one point, the findings note that on June 4, Thomas signed off the shipping articles "thereby effectuating his discharge." This is incon-

sistent with the court's disposition but is perhaps attributable to the fact that the findings and conclusions were drafted by counsel for the shipping company.

However, Thomas' counsel suggested to the district judge that he had prevailed to such limited extent that opposing counsel should draft the findings of fact and conclusions of law. Without attempting to understand such strategy, we simply note that counsel does not explain why he prevailed sufficiently to be awarded costs, but not enough to draft the findings and conclusions. We find no abuse of discretion in the refusal to award costs.

## DENIAL OF MOTION TO REOPEN:

Finally, Thomas claims that the district court abused its discretion in denying his motion to reopen to hear new evidence affecting the credibility of the paymaster. A motion to reopen for additional proof is addressed to the sound discretion of the trial judge. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331–2, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), *citing Locklin v. Switzer Bros.*, 299 F.2d 160, 169–170 (9th Cir. 1961).

Since Thomas and the paymaster were the only key witnesses, the district judge could weigh their credibility. Furthermore, the newly discovered evidence does not have the persuasive power Thomas claims for it. We find no abuse of discretion in the denial of the motion to reopen for new evidence. *See, e. g., Angco v. Standard Oil Co.*, 66 F.2d 929, 930 (9th Cir. 1933); *Penn. Mutual Life Insurance Co. v. Fields*, 81 F.Supp. 54, 62–63 (S.D.Cal.1948), *aff'd* 178 F.2d 200 (9th Cir. 1949).

The judgment of the district court is affirmed.