**I Hyeon SU, et al., Plaintiffs,**

**v.**

**M/V SOUTHERN ASTER, In Rem, and Southern Aster Navigation, S.A., Defendants.**

**Civ. No. 90–165–MA.**

United States District Court, D. Oregon.

Feb. 28, 1990.

On Reconsideration May 10, 1990.

---

Richard J. Dodson, Thomas E. Richard, Baton Rouge, La., John Buehler, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for plaintiffs.

Paul N. Wonacott, Wood, Tatum, Mosser, Brooke & Landis, Portland, Or., for defendants.

## OPINION

MARSH, District Judge.

Plaintiffs are twenty former crew members of the M/V SOUTHERN ASTER and the Federated Korean's Seamen's Union (FKSU). All plaintiffs are citizens of Korea. Plaintiffs seek to recover back wages and penalties pursuant to 46 U.S.C. § 10313 as well as compensatory and punitive damages for alleged fraudulent labor practices. On February 21, 1990, plaintiffs filed a complaint with this court and the Southern Aster was arrested at the Port of Coos Bay by United States Marshals. On February 23, 1990, an expedited hearing was held at which time I set the amount of

the bond to be posted in order to secure release of the vessel at $500,000. The following constitutes a written formalization of my oral rulings and conclusions of law.

This action originally came before me on defendants' motion to dismiss plaintiffs' wage claims for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and their motion to vacate the arrest of the M/V Southern Aster. At the first expedited hearing held on February 22, 1990, I denied defendants' motion to dismiss for lack of subject matter jurisdiction. I found that the cases relied upon by defendants may have supported a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), but they did not support defendants' contention that this court was without subject matter jurisdiction to hear the wage claims of foreign seamen under general maritime law. *See Cuevas v. Reading and Bates Corp.*, 770 F.2d 1371, 1380 (5th Cir.1985)[1] (court discusses applicability of former section 46 U.S.C. § 10313 to foreign seamen's claims, but does not address threshold jurisdiction issue); and *Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F.2d 568, 574 (2nd Cir.), *cert. denied*, 364 U.S. 915, 81 S.Ct. 272, 5 L.Ed.2d 228 (1960) (same).

At the end of this hearing I directed the parties to address the issue of setting a bond to release the vessel pursuant to Admiralty Rule E(5)(a). The parties stipulated that the value of the vessel was $10 million and thus the maximum amount allowable under Rule E(5). Thereafter, plaintiffs submitted a memoranda in which they argued that they were entitled to a bond for the full value of the vessel as their claims for back pay, penalty wages, and compensatory and punitive damages exceeded $10 million.[2] Defendants indicated a willingness to agree to a bond of $500,000 to cover claims for back wages under general maritime law, but argued that plaintiffs had failed to state a claim

for penalty wages under section 10313(g). I indicated to the parties that I would not consider plaintiffs' claims for compensatory or punitive damages based upon my earlier ruling on the identical issue in *Jose, et al. v. M/V Fir Grove*, Civ. No. 90–6028–MA (February 7, 1990) (oral ruling denying inclusion of plaintiffs' fraud damages within bond amount under Rule E(5)(a)).

▮ Rule E(5)(a) provides that the amount of the bond set shall be up to two times plaintiffs' claim "fairly stated." Section 10313(i) provides that the section will apply only to "seamen on a foreign vessel when in a harbor of the United States." Thus, the issue presented before me in this case was whether foreign seamen, discharged from their foreign vessel in a foreign port in May of 1988, could bring a claim for penalty wages under section 10313 against the owner of a foreign vessel.

On February 23, 1990, I held an additional hearing to set the amount of the bond. After reviewing the memoranda and cases cited by both parties and hearing additional arguments regarding plaintiffs' basis for claiming penalty wages under section 10313(g), I determined that plaintiffs had failed to state a claim for penalty wages. In reaching this conclusion, I found that each of the cases relied upon by plaintiffs was distinguishable in several material respects. First, in *Henry v. S/S Bermuda Star*, 863 F.2d 1225 (5th Cir.1989), the Court addressed the issue of the dual application of Panamanian and United States Labor Law to the plaintiff-seamen's wage claims. The Court held that a repatriation deduction made in accordance with Panamanian law would not be considered illegal under the U.S. wage penalty provision (section 10313) although not expressly excluded under that statute. At footnote 70 of that opinion, the court expressly limited the application of its holding to the facts at

---

**1.** The holding in *Cuevas* as it relates to the doctrine of forum non conveniens was expressly overruled in *In re Air Crash Disaster Near New Orleans, L.A.*, 821 F.2d 1147, 1163 (5th Cir.1987).

**2.** Plaintiffs claim the following in damages: 1) approximately $250,000 in back wages; 2) ap-

proximately $13 million in penalty wages pursuant to 46 U.S.C. § 10313(g) through 2/28/90 or $28.8 million through 12/91; 3) $3.3 million in compensatory damages; and 4) $3.3 million in punitive damages.

hand and declined to hold that section 10313 was directly applicable to foreign seamen's wage claims. Similarly, in *Thomas v. SS Santa Mercedes,* 572 F.2d 1331 (9th Cir.1978) the Court addressed the issue of when the plaintiff was "discharged" for the purpose of determining the amount of the penalty claim, but did not address the threshold issue presented here regarding the nationality of the seamen or of the vessel owner and the plaintiff's entitlement to state a claim under section 10313.

Finally, I found that while Judge Dwyer's decision in *Galon, et al. v. M/V HIRA II, et al.,* Civ No. 89–888, 1989 WL 211484 (order filed Oct. 27, 1989) and the decision in *Ventiadis v. C.J. Thibadeaux & Company,* 295 F.Supp. 135 (S.D.Tex.1968) lend some support to plaintiffs' argument, both decisions are distinguishable and unpersuasive. In *Ventiadis,* the trial judge gave great weight to the fact that the beneficial owner of the vessel was an American citizen and thus, the suit was between two foreign nationals "in name only." In *HIRA II,* Judge Dwyer concluded, without discussion, that the penalty wage claims of foreign seamen could be included within the release bond based upon *Henry* and *Thomas,* discussed above. Because I find that the holdings in *Henry* and *Thomas* are not dispositive of the issue presented here, I do not agree with Judge Dwyer's conclusion and decline to adopt it.

Based on the foregoing, I concluded that the bond should be set at $500,000, or roughly two times the plaintiffs' claim for back wages "fairly stated." I found that doubling was necessary to account for costs and time spent in litigation. Based upon defendants' submission of a letter of credit and plaintiffs' stipulation as to the adequacy of the security which will bear interest at a rate of 6%, I signed an order releasing the vessel immediately following the hearing.

## ON RECONSIDERATION

Plaintiffs are former crew members of the M/V SOUTHERN ASTER and the Federated Korean's Seamen's Union (FKSU). Plaintiffs seek to recover back wages and penalties pursuant to 46 U.S.C. § 10313 as well as compensatory and punitive damages for alleged fraudulent labor practices. On February 23, 1990, I granted defendant's motion to dismiss plaintiffs' penalty wage claims upon argument and without opinion due to the expedited nature of the hearing. On April 23, 1990, I granted plaintiffs' motion for reconsideration of my prior order because of the time constraints and plaintiffs' submission of additional authorities. In addition, defendant moves to dismiss this action based upon the doctrine of *forum non conveniens* and plaintiff moves to consolidate this case with *Munoz v. M/V SOUTHERN ASTER,* Civ. No. 90–122–MA. For the reasons that follow, my prior ruling dismissing plaintiffs' claims for penalty wages pursuant to Fed.R.Civ.P. 12(b)(6) is affirmed, defendant's motion to dismiss on the basis of *forum non conveniens* is granted and plaintiffs' motion to consolidate is denied as moot.

## BACKGROUND

On February 21, 1990 the Southern Aster was arrested at the Port of Coos Bay by United States Marshals. On February 22 and 23, 1990, I conducted an expedited hearing to set the amount of bond necessary to release the vessel. In addition, I denied defendants' motion for dismiss for lack of jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1), but granted its motion to the extent it sought to dismiss plaintiffs' claims for penalty wages under § 10313.

At the hearing on February 23, 1990, and in a follow-up opinion issued on February 28, 1990, I found that plaintiffs claims for penalty wages were not "fairly stated" and thus could not be included within the amount of the bond. In addition, I determined that plaintiffs had failed to state a claim for penalty wages under § 10313. Based upon the cases submitted by both parties, I found that there was no legal support for plaintiffs' contention that foreign seamen, discharged from a foreign vessel, in a foreign port were entitled to the protection of the U.S. Shipping Act.

## DISCUSSION

### 1. *Reconsideration of the Applicability of Penalty Wages*

■ The United States Shipping Act, 46 U.S.C. § 10313, provides in relevant part:

(f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier. When a seaman is discharged and final payment of wages is delayed for the period permitted by this subsection, the seaman is entitled at the time of discharge to one-third of the wages due the seaman.

(g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

\* \* \* \* \* \*

(i) This section applies to a seaman on a foreign vessel when in a harbor of the United States. The courts are available to the seaman for the enforcement of this section.

Plaintiffs are all Korean citizens. The Southern Aster is owned by a Panamanian company, flies the Panamanian flag and its beneficial owner is Japanese. Plaintiffs were discharged from the Southern Aster in Japan in May of 1988.

Subsection (f) of the statute provides that the penalty wage provision is only triggered upon "discharge of cargo or seaman." All of the cases cited by plaintiff in which a foreign seaman has been allowed to recover under U.S. wage provisions involve actual *discharge* at a United States port. *See, Patterson v. Bark Eudora,* 190 U.S. 169, 23 S.Ct. 821, 47 L.Ed. 1002 (1903) (anti-advance wage statute applies to foreign seamen where the wrongful acts on the territory and within the jurisdiction of the U.S.); *The Sonderborg,* 47 F.2d 723 (4th Cir.1931) (wage statute applies where foreign seamen who signed on in New Orleans were discharged in Norfolk, Virginia); *Caribbean Federation Lines v. Dahl,* 315 F.2d 370 (5th Cir.) *cert. denied* 375 U.S.

831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963) (statute held applicable to foreign seamen aboard a foreign owned vessel where discharged in Mobile, Alabama); *Mihalinos v. Liberian S.S. Trikala,* 342 F.Supp. 1237 (S.D.Cal.1972) (Greek seaman discharged in Alaska, court did not reach issue of applicability of wage statute, finding instead that claim not made in good faith).

In *Strathearn v. Dillon,* 252 U.S. 348, 40 S.Ct. 350, 64 L.Ed. 607 (1920), a British seaman on board a British vessel invoked what is now 46 U.S.C. § 10313(e) which allows a seaman to receive one-half of the balance of wages earned and unpaid upon demand while the ship was in Pensacola, Florida. Justice Brandeis held that the provision conferring the right to demand half-wages applies to foreign seamen on foreign vessels, "when they enter our ports." The Court reasoned that subjection to U.S. law in order to override valid foreign contractual provisions to the contrary, is a "condition of the right to such foreign vessels to enter and use ports of the U.S." *Id.* at 356, 40 S.Ct. at 352. *See also Southern Cross S.S. Co. v. Firipis,* 285 F.2d 651 (4th Cir.1960) *cert. denied* 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961) (Greek seaman may claim past wages and penalties in this country after the ship reaches an American port).

Similarly, the legislative history relied upon by plaintiffs wherein they cite Senator Fletcher's debate of 1915 (regarding the predecessor statute, 46 U.S.C. §§ 596, 597), although comprehensive in its intent to equalize costs between foreign and domestic merchant vessels, similarly recognizes a jurisdictional limit to vessels in ports of the United States. Congressional Record–Senate, October 22, 1915 at 5748.

In addition, plaintiffs contend that *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) demonstrates that plaintiffs need only have substantial contacts with the U.S. in order to invoke U.S. laws. However, *Rhoditis* involved a claim brought pursuant to the Jones Act and the Court's analysis was limited to finding whether or not plaintiffs had established sufficient minimum contacts in order to avoid a dismissal based

upon the doctrine of *forum non conveniens*. Thus, the Court did not address the applicability of the Shipping Act nor its specific provision requiring discharge as a prerequisite to a claim for penalty wages. § 10313(f). *See also Mihalinos*, 342 F.Supp. 1237.

In my prior ruling, I also found that each of the cases originally relied upon by plaintiffs was distinguishable in several material respects. Plaintiffs offer no new arguments regarding their prior cited cases, but specifically re-urge me to adopt Judge Dwyer's conclusion in *Galon, et al. v. M/V HIRA II, et al.*, Civ. No. 89–888, 1989 WL 211484 (order filed Oct. 27, 1989). In *HIRA II*, Judge Dwyer concluded, without discussion, that the penalty wage claims of foreign seamen could be included within the release bond. However Judge Dwyer did not address the jurisdictional issues raised here and based his conclusion on *Henry v. S/S Bermuda Star*, 863 F.2d 1225 (5th Cir.1989) and *Thomas v. SS Santa Mercedes*, 572 F.2d 1331 (9th Cir.1978), both of which I found were distinguishable as they failed to address the threshold jurisdictional inquiry.

In *Escobar v. S.S. Washington Trader*, 640 F.2d 1063 (9th Cir.1981), the plaintiff, whose nationality is uncertain from the text of the opinion, was discharged in Manila and sought recovery under the U.S. penal wage statute.[1] The court did not discuss jurisdiction, and its holding was limited to the issues of the timeliness of plaintiff's claim and whether or not defendant was entitled to credit for funds expended by the owner for a plane ticket back to the United States. However, the court did note that plaintiff was discharged from an American Merchant vessel.

In *Heros v. Cockinos*, 177 F.2d 570 (4th Cir.1949), the court held that the anti-advance statute applied to foreign seamen discharged in foreign ports where the illegal advances and deductions occurred in the United States. Following that opinion, the Fourth Circuit refused to reach the issue of the applicability of the U.S. wage statute to a foreign seaman, on a foreign vessel when in a foreign country. *Fitzgerald v. Liberian S/T Chryssi P. Goulandris*, 582 F.2d 312, 314 (4th Cir.1978). However, the court distinguished *Heros* on the basis that the illegal acts in *Heros* actually occurred within the United States. *Id.* 582 F.2d at 313. The court went on to hold that the U.S. wage statute was inapplicable because plaintiff's estate failed to present a good faith claim for an "end of voyage" payment since plaintiff had only served 23 days out of his one year contract before his death. The Court reasoned that death did not constitute "discharge" which would invoke the end of voyage payment. *See also Morewitz v. Andros Compania Maritima, S.A.*, 614 F.2d 379 (4th Cir.1980) (court did not address jurisdiction, but held claim for end of voyage payment not made in good faith because death does not constitute a discharge).

Finally, several cases relied upon by plaintiffs hold that U.S. wage statutes are applicable to U.S. seamen discharged in foreign ports, *Matise v. American Foreign Steamship Co.*, 488 F.2d 469 (9th Cir.1974), *rev'd* 423 U.S. 150, 96 S.Ct. 410, 46 L.Ed.2d 354 (1975); *Vincent, et al. v. United States*, 272 F. 889 (9th Cir.1921), or foreign seamen serving on an American vessel, *see Arguelles v. U.S. Bulk Carriers*, 408 F.2d 1065 (4th Cir.1969) *aff'd*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971). I find all of these cases distinguishable from the facts presented in this case.

Plaintiffs argue that § 10313 applies to foreign seamen, who work or worked aboard foreign vessels and who are discharged at any port in the world on the basis of a subsequent entry of the vessel into a U.S. port. Plaintiffs contend that the vessel need only have been in a U.S. harbor at some point in time with the plaintiffs seamen on board for the penalty wage statute to apply to their claims. Otherwise, plaintiffs argue, foreign shipowners could effectively circumvent United States

---

**1.** Plaintiffs refer to Escobar as a "Philippine national." However, the court indicates that plaintiff was an "illegal alien" while in the Philippines. Defendant contends that Escobar was an American.

laws by consistently discharging their foreign crews in foreign ports, even though all or most of their shipments were to and from the United States. However the statute relied upon by plaintiffs as the basis of their claim for penalty wages clearly requires "discharge" of either cargo or crew as a prerequisite to recovery and no court has yet to find such an extension appropriate. Thus, the statute creates a "gap" wherein foreign vessel owners may avoid the penalty wage provisions so long as they leave a domestic port without being haled into court and discharge their seamen in a foreign port.

Although plaintiffs argument is well-taken, and I can envision how such a tactic could potentially be abused by foreign vessel owners, the statute clearly requires discharge in a U.S. port as a jurisdictional prerequisite. Further, no court has extended the coverage of the U.S. wage provisions to a situation analogous to that presented here. Based on the foregoing, I find that plaintiffs have failed to state claims for penalty wages as they are not entitled to recover under the U.S. Shipping Act's wage laws, 46 U.S.C. § 10313(g). Accordingly, my prior ruling dismissing their claim for penalty wages is affirmed.

2. *Motion to Dismiss for Forum Non Conveniens*

 In *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) the Supreme Court set forth the test for determining whether or not a U.S. court should exercise jurisdiction under the Jones Act for injuries sustained by a foreign seaman while serving aboard a foreign vessel, where his only contact with the U.S. forum was the signing of his shipping articles while he was in this country temporarily.

In determining that the Jones Act was inapplicable because of insufficient contacts with the United States, the Court considered the following factors: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance of the domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; and (7) the law of the forum. However, the *Lauritzen* test is not exhaustive. In subsequent cases the Supreme Court has also considered defendant's base of operations, and whether defendant has had "substantial and continuing" business contacts with the forum. *Hellenic Line Ltd. v. Rhoditis*, 398 U.S. 306, 310, 90 S.Ct. 1731, 1734, 26 L.Ed.2d 252 (1970).[2]

The central focus of a *forum non conveniens* inquiry is convenience, and the factors must be applied flexibly and comprehensively, with no one decisive factor. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252, 263, 70 L.Ed.2d 419 (1981).[3] In addition, the court must determine whether an alternative forum exists. *Id.* at 253, n. 22, 102 S.Ct. at 265, n. 22. Dismissal is appropriate where trial in plaintiff's chosen forum "imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id,* citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

Plaintiffs first argue that jurisdiction is mandatory given the application of the U.S. wage statute, 46 U.S.C. § 10313. Second, plaintiff argues that the balance of factors favors a U.S. forum given the application of general maritime law to their wage and fraud claims, defendant's extensive transactions with Oregon, and their contention

---

**2.** In *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), the Supreme Court affirmed the test set forth in *Lauritzen* and applied it to an action brought by a foreign seaman under the general maritime law of this country.

**3.** Although no one factor may be determinative, factors of greater importance have been identified as the domicile of the plaintiff, the based of operations and place of substantial contacts, the accessibility of the foreign forum, and the law of the flag. Thomas Schoenbaum, Admiralty and Maritime Law 190–191 (West Pub.1987) *citing Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512 (11th Cir.1985); *Villar v. Crowley Maritime Corp.*, 782 F.2d 1478 (9th Cir.1986); *Dracos v. Hellenic Line, Ltd.*, 762 F.2d 348 (4th Cir.1985); *Pereira v. Utah Transport, Inc.*, 764 F.2d 686 (9th Cir.1985) *cert. dismissed*, 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986).

that all of their major witnesses are English speaking and reside in the United States. However, plaintiff only identifies one U.S. witness, an American inspector for International Transport Worker's Federation (ITF), an international union affiliated with FKSU.

In carefully weighing all of the factors present in this case, I find that dismissal on the basis of *forum non conveniens* is appropriate on three grounds. First, either Korean, Japanese, or Panamanian law will apply to plaintiffs' wage claims. Plaintiffs were recruited in Korea and the Collective Agreement, which specifically provides for the application of Korean law, was executed in Pusan, Korea. The voyages of the SOUTHERN ASTER all began and terminated in Japan. Plaintiffs joined the ship in Japan and were discharged in Japan. The law of the flag is Panamanian.

Second, the case would be more conveniently tried in another forum given that the contracts and documentation are in Korea and Japan, all plaintiffs reside in Korea, and defendant's base of operations is in Japan. Given the probable application of Korean contract and labor law and the interests of Korea in this dispute, trial in Korea would be more appropriate in its court as well.

Finally, an alternative forum exists in Korea. In its Reply, defendant agrees that as a condition to dismissal of this action, defendant would submit to the jurisdiction of a Korean court. Defendant alleges, and plaintiff does not dispute that Korea is viable alternative forum.

Although it appears from the pleadings that defendants have had substantial contacts with the U.S., the balance of factors tips in favor of dismissal. The parties, alleged wrongful acts, source of proof and majority of witnesses all appear to be in either Japan or Korea. The collective agreement itself calls for the application of Korean law to this dispute, and both par-

ties agree that Korea is an available alternative forum. United States jurisdiction is not mandatory given my previous finding that the U.S. Shipping Act wage statutes do not apply to plaintiffs' claims.[4] The interests of the United States in resolution of this matter is minimal, while the interests of Korea and Japan appear substantial given the need for consistent application of contract and labor law principles to this dispute. Defendants base of operations is in Japan and Korea, all plaintiffs reside in Korea, and all documentary evidence is in Japan and Korea.

Based on the foregoing, defendant's motion to dismiss on the basis of *forum non conveniens* is granted in light of the substantial burden that would be imposed upon defendant and the court and the interests of Korea and resolution of this dispute. Both public and private factors indicate that dismissal is both appropriate and fair.

### 3. *Plaintiffs' Motion to Consolidate*

Plaintiffs move to consolidate this action with another action currently pending before this court, *Munoz, et al. v. Southern Aster*, Civ. No. 90–122–MA. At the hearing held on April 23, 1990, plaintiffs agreed that if defendant's motion to dismiss was granted, that their motion to consolidate would be moot. Accordingly, in light of my ruling dismissing this action on the basis of *forum non conveniens*, plaintiffs' motion to consolidate is denied as moot.

---

**4.** During oral argument, plaintiffs offered an additional basis for mandatory jurisdiction under 46 U.S.C. § 10313(e) which provides that seamen may recover one-half of the balance of wages earned, on demand, at each port at which the vessel is loaded. However plaintiff offered no evidence, nor am I able to find any indication in the record, that a demand for one-half wages was ever made at any port.