Susan Sheaffer **TAYLOR**, for herself, and Charles R. Taylor, as Trustee for Harriett Dunlap Taylor, et al., Plaintiffs,

v.

**SMITH, BARNEY & CO., INCORPORAT-ED**, a Delaware corporation, Defendant.

No. NC 12–71.

United States District Court, D. Utah, N. D.

April 18, 1973.

Albert J. Colton, Warren Patten, Tom Ford, Fabian & Clendenin, Salt Lake City, Utah, for plaintiffs.

Albert R. Bowen, Thomas A. Quinn, Ray, Quinney & Nebeker, Salt Lake City, Utah, William H. Orrick, Jr., Jeffrey R. Lapic, Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., for defendant.

*ALDON J. ANDERSON*, District Judge.

Plaintiffs moved for partial summary judgment pursuant to rule 56, Federal Rules of Civil Procedure, on September

8, 1972. The issues were fully briefed and arguments were heard November 15, 1972. Decision of the motion was postponed pending determination of plaintiffs' subsequent motion to amend their complaint. The motion to amend has now been granted.

Plaintiffs (hereinafter sometimes the "Taylors") and defendant (hereinafter sometimes "Smith, Barney") are well acquainted. Smith, Barney acted as broker or dealer in more than 650 stock transactions made for the Taylors' accounts over a four-and-one-half-year period ending in early 1971. By their motion for partial summary judgment, the Taylors ask the court to focus on at least 60 of those transactions in which it is claimed Smith, Barney failed to disclose that it was making a market in the stocks which were bought and sold. The Taylors argue that this failure to disclose constituted the omission of a "material fact" in contravention of section 10(b) of the Securities Exchange Act of 1934 (hereinafter the "Act"),[1] rule 10b–5(2)[2] promulgated thereunder, Utah Code Ann. §§ 61–1–1 and 22(1)(b)[3] and, as to securities sold, section 17 of the Securities Act of 1933.[4]

The Taylors also seek a ruling that Smith, Barney failed to disclose that it was acting as a dealer in these transactions and thereby violated sections 10(b) and 15(c)(1)[5] of the Act and rules 10b–3,[6] 10b–5 and 15c1–4.[7]

1. 15 U.S.C. § 78j(b).

2. 17 C.F.R. § 240.10b–5(2) which provides:

Rule 10b–5. Employment of Manipulative and Deceptive Devices.

It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange

. . . . .

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. . . .

3. These sections impose liability on terms similar to rule 10b–5. See e. g., Young v. Taylor, 466 F.2d 1329, 1334–1335 n. 4, 1337–1338 (10th Cir. 1972). While these sections were first pleaded after plaintiffs moved for partial summary judgment, disposition of the motion as to rule 10b–5 will be dispositive of the corresponding claims pursuant to these sections.

4. 15 U.S.C. § 77q. While this section is not mentioned in plaintiffs' motion for partial summary judgment, it is pleaded and disposition of the motion as to rule 10b–5 will be dispositive of the claims pursuant to this section.

5. 15 U.S.C. § 78o(c)(1) which provides in part:

No broker or dealer shall make use of the mails or of any means or instrumentality of interstate commerce to effect any transaction in, or to induce the purchase or sale of, any security . . . otherwise than on a national securities exchange, by means of any manipulative, deceptive, or other fraudulent device or contrivance. The Commission shall, for the purpose of this subsection, by rules and regulations define such devices or contrivances as are manipulative, deceptive, or otherwise fraudulent.

6. 17 C.F.R. § 240.10b–3 which provides:

It shall be unlawful for any broker or dealer, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, to use or employ, in connection with the purchase or sale of any security otherwise than on a national securities exchange, any act, practice, or course of business defined by the Commission to be included within the term "manipulative, deceptive or other fraudulent device or contrivance," as such term is used in Section 15(c) of the Act.

7. 17 C.F.R. § 240.15c1–4 which provides in part:

The term "manipulative, deceptive, or other fraudulent device or contrivance," as used in Section 15(c)(1) of the Act, is hereby defined to include any act of any broker or dealer designed to effect with or for the account of a customer any transaction in, or to induce the purchase or sale by such customer of, any security . . . unless such broker or dealer, at or before the completion of each such transaction, gives or sends to such customer written notification disclosing (1) whether he

Materiality is at the epicenter of this dispute.

██ In rule 10b–5 actions, the materiality of an omitted fact may be tested by determining whether a reasonable investor might have considered it important in the making of his investment decision. *E.g.*, Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Judicial pursuit of the "reasonable investor" has led most often to a consideration of the fact constellation of each case including the relationship of the parties, the experience of the investor, the nature of the transaction and the nature of the omitted fact. *See e. g.*, Mitchell.v. Texas Gulf Sulfur Company, 446 F.2d 90, 103 (10th Cir. 1971), cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971) and 405 U.S. 918, 92 S.Ct. 943, 30 L.Ed.2d 788 (1972); City National Bank v. Vanderboom, 422 F.2d 221, 230–231 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed.2d 560 (1970); Clement A. Evans & Co. v. McAlpine, 434 F.2d 100, 104 (5th Cir. 1970), cert. denied, 402 U.S. 988, 91 S.Ct. 1660, 29 L.Ed.2d 153 (1971); Myzel

v. Fields, 386 F.2d 718, 735–736 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); List v. Fashion Park, Inc., 340 F.2d 457, 464 (2d Cir.), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965); Kohler v. Kohler Co., 319 F.2d 634, 641–642 (7th Cir. 1963).[8, 9] Thus, for instance, whether a reasonable investor might consider a fact important to his investment decision may depend in part upon his business acumen. The reasonable investor of substantial business acumen presumably would more diligently test the reliability and completeness of representations made concerning a proposed transaction before considering them important than would one of lesser acumen. *E. g.*, City National Bank v. Vanderboom, *supra*.

██ The fact of reliance upon a statement or omission, is of course, persuasive evidence of that statement or omission's materiality (*e. g.*, Gilbert v. Nixon, 429 F.2d 348, 363 [10th Cir. 1970]) but actual reliance, at least in the present circumstances, is not an element necessary to recovery. Affiliated

---

is acting as a broker for such customer, as a dealer for his own account, as a broker for some other person, or as a broker for both such customer and some other person . . . .

8. It has been suggested, in a related context, that the relevance of surrounding circumstances depends upon whether the court takes an "objective" or "subjective" view of the reasonable investor. Comment, Reasonable Reliance under Rule 10b–5: Is the "Reasonable Investor" Reasonable?, 72 Colum.L.Rev. 562, 566–576 (1972). However, as in tort cases where the objective "reasonable man" is defined in part by his surroundings, the application of an objective materiality test usually results in the consideration of surrounding circumstances. *E. g.*, City National Bank v. Vanderboom, 422 F.2d 221, 230 n. 10 (8th Cir.), cert. denied, 399 U.S. 905, 90 S.Ct. 2196, 26 L.Ed. 2d 560 (1970); List v. Fashion Park, Inc., 340 F.2d 457, 462, 464 (2d Cir.), cert. denied, 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965).

9. In circumstances other than those before the court, the specific fact constellation may be given lesser weight. Where the Securities Exchange Commission brings suit, materiality may be determined without detailed reference to the circumstances of individual investors. Such an action, in effect, seeks to invoke a remedial law in behalf of all investors. As a result, materiality may be measured against the prototypal "reasonable investor." *E. g.*, S.E.C. v. Texas Gulf Sulfur Co., 401 F.2d 833, 849–850 (2d Cir. 1968), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). Where the transaction is impersonal, as where the parties are separated by a stock exchange, or the burden of proof otherwise difficult, the courts similarly may decline thoroughly to penetrate the surrounding circumstances before invoking the remedial purposes of rule 10b–5 through a finding of materiality. *See* Comment, Reasonable Reliance under Rule 10b–5: Is the "Reasonable Investor" Reasonable?, *supra* note 8, at 576–577.

Ute Citizens v. United States, *supra* 406 U.S. at 153–154, 92 S.Ct. 1456.[10, 11]

■ As the foregoing discussion suggests, the materiality of Smith, Barney's market making activities depends largely upon a constellation of facts which is not adequately before the court and which probably must be established at trial. The significance a reasonable investor under the circumstances might attach to Smith, Barney's nondisclosure of its market making activities may be affected, for instance, by the availability of this information from other sources, previous experience and acquaintance with market makers and with Smith, Barney, the possibility of stock price manipulation by Smith, Barney as a result of its market making activities, reliance upon market making information in similar transactions where disclosure was made, the general nature of market making, the general results of such activities and the safeguards provided to the public in regard to such activities, the specific circumstances of Smith, Barney's market making in the disputed transactions, and cognate disclosures by Smith, Barney which may have covered elements of the nondisclosure. *See* Chasins v. Smith, Barney & Co., 438 F. 2d 1167 (2d Cir. 1971), substituting opinion for [1969–1970 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,712 (2d Cir. 1970) and denying rehearing in banc (Judges Lumbard, Moore and Friendly dissenting from denial of rehearing); Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., [Current] CCH Fed.Sec.L.Rep. ¶ 93,604 (N.D.Tex. 1972); Batchelor v. Legg & Co., 52 F. R.D. 553 (D.Md.1971). And from the affidavits and depositions before the court, the possibility is not entirely foreclosed that Smith, Barney can short circuit the question of material omissions by a showing at trial of oral disclosure to the Taylors of the pertinent market making activities themselves. Summary judgment sought by plaintiffs on the issues raised by defendant's market making is inappropriate.

In each of the disputed stock transactions, the Taylors were sent a confirmation slip containing on its reverse side the disclosure: "We are acting as principal for this trade." Use of the term "principal" instead of "dealer" on these confirmation slips amounts to inadequate disclosure according to the plaintiffs.

■ By the present motion the court is asked to find as a matter of law that the nuance of meaning separating "principal" from "dealer" is material within the meaning of rule 10b–5(2). For reasons similar to those discussed above, such a determination is inappropriate without full consideration of the facts surrounding the terms and the instant transactions.

10. As a result, judicial inquiry into the circumstances touching reliance may be muted.

Since actual reliance is not a necessary element of recovery, some plaintiffs may recover under rule 10b–5 even though the omitted fact would not have affected their investment decision. However, strictly speaking, this class of windfall plaintiffs is limited to those whose investment decision is unreasonable under the circumstances. Any reasonable plaintiff presumably actually will have relied upon a material omission which by definition is an omission which might be of importance to him. In practice, of course, this liberal rule eliminates difficulties of proof for all plaintiffs.

The allowance of some windfall recoveries, such as in the case of singularly unsophisticated investors (*cf.* facts of Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 [1972]) has been justified as a means of deterring fraudulent conduct. *E. g.*, The Supreme Court, 1971 Term, 86 Harv.L.Rev. 52, 270–271 (1972).

11. Separate from the question of actual reliance, in the terminology of some courts, is the question of "reasonable reliance." Discussions of reasonable reliance are nothing more than discussions of materiality under another name. *Cf.* Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., [Current] CCH Fed.Sec. L.Rep. ¶ 93,604 at 92,784 (N.D.Tex. 1972); Comment, Reasonable Reliance under Rule 10b–5: Is the "Reasonable Investor" Reasonable?, *supra* note 8.

Section 15(c)(1) of the Act[12] proscribes the use of "any manipulative, deceptive, or other fraudulent device or contrivance" by brokers or dealers in transactions such as those between the Taylors and Smith, Barney. Rule 15c1–4[13] defines the quoted phrase to include nondisclosure of the fact that the broker or dealer is acting "as a dealer for his own account." Plaintiffs seek a determination that defendant's disclosure of its "principal" status did not comply with the requirements of rule 15c1–4 and therefore violated sections 15(c)(1) and 10(b) of the Act, rule 10b–3[14] and, presumably, the ubiquitous rule 10b–5. This determination, too, is linked closely to the previous discussion of materiality since it may be assumed that the Securities Exchange Commission intended rule 15c1–4 to impose liability only for the nondisclosure of a material, i. e. important, fact. At some point disclosure by the use of terms akin to "dealer" reveals to the investor all but the immaterial or unimportant nuances of meaning contained in the term "dealer" itself.

It has been argued that the difference in meaning between "principal" and "dealer" is important (Cant v. A. G. Becker & Co., [1971–72 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 93,347 at 91,872–73 [N.D.Ill.1971]; Chasins v. Smith, Barney & Co., 306 F.Supp. 177, 178 [S.D.N.Y.1969] memorandum supplementing 305 F.Supp. 489 [S.D.N.Y. 1969]) and unimportant (Chasins v. Smith, Barney & Co., *supra*, 438 F.2d at 1175 [dissenting opinion of Judge Friendly, joined by Judges Lumbard and Moore]). Certainly the terms "principal" and "dealer" are sometimes thought of as interchangeable in common securities parlance. *E. g.*, Brief for S.E.C. as Amicus Curiae at 2, Chasins v. Smith, Barney & Co., *supra*, 438 F.2d 1167 (2d Cir. 1971) ("In particular, they might deal with the extent and time of disclosure of market making as, for example, was done in *Rule 15c1–4, 17 C.F.R. 240.*

15c1–4 *requiring broker-dealers to disclose whether they are acting as principal or agent* in a securities transaction." Emphasis added.); Opper v. Hancock Securities Corporation, 250 F.Supp. 668, 675 (S.D.N.Y.), aff'd, 367 F.2d 157 (2d Cir. 1966) (". . . [F]or the purposes that concern us here, it made no difference whether defendant operated 'as principal' or 'as broker' . . . ."). The court is presently not convinced of the importance of the principal-dealer distinction generally or in the particular fact situation of this case. Summary judgment will not be granted.

Plaintiffs' motion for partial summary judgment is denied. It is so ordered.

12. Set out in note 5 *supra.*

13. Set out in note 7 *supra.*

14. Set out in note 6 *supra.*