**Elmo E. KOOS, Sr. and Caroline M. Koos, Plaintiffs-Appellants,**

v.

**FIRST NATIONAL BANK OF PEORIA, Defendant-Appellee.**

**No. 73-1694.**

United States Court of Appeals, Seventh Circuit.

Heard Feb. 11, 1974.

Decided May 17, 1974.

John F. Sloan, Peoria, Ill., for plaintiffs-appellants.

Carroll Baymiller, Peoria, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, KILEY, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

The two named plaintiffs filed a class action complaining that the defendant bank was charging usurious interest. The gravamen of the complaint was that defendant was charging them in excess of the 8 per cent rate of interest permissible under the Illinois Usury Law. Ill. Rev.Stats.1973, ch. 74, § 4. The National Bank Act provides for the recovery of twice the amount of interest illegally charged, but contains a two-year statute of limitations.[1] Illegality is to be determined under state law, subject to an exception in the Act not relied on by defendant. 12 U.S.C. §§ 85 and 86. The plaintiffs' theory is that since the 8% interest charged on their loan was calculated for a 360-day period, the amount of interest charged in a full year was more than 8%. The complaint admits that the loan rate paid by plaintiffs was reduced below 8% effective January 1, 1971.

Plaintiffs' loan was obtained on June 1, 1970, and was for $56,100. Their note was secured by the pledge of four savings and loan certificates for withdrawal of capital accounts totaling $18,000 and by the assignments of the cash surrender values under two life insurance policies totaling $40,650.

The district court granted defendant's motion to dismiss the action with prejudice. 358 F.Supp. 890. The dismissal was largely based upon the exception in the Illinois usury statute, which provides in pertinent part:

"It is lawful to charge, contract for, and receive any rate or amount of in-

---

1. The complaint was filed on November 29, 1972, and complained of "usury" being charged in the last 7 months of 1970. Because of the two-year limitation period, plaintiffs can seemingly complain only of overcharges for two days in November and for all of December 1970. In the reply brief, the plaintiffs do not dispute that the overcharge in November was only 35¢ and in December only $5.18. They do assert their entitlement to twice the amount of interest paid in those months, and they hint that interest for other months may have been paid late and within the period of limitations. They also suggested at oral argument that the statute of limitations was tolled by the bank's fraudulent concealment. None of these limitations issues is before us for decision.

terest or compensation with respect to the following transactions:

\* \* \* \* \* \*

"(b) Advances of money, repayable on demand, to an amount not less than $5,000, which are made upon warehouse receipts, bills of lading, certificates of stock, certificates of deposit, bills of exchange, bonds or other negotiable instruments pledged as collateral security for such repayment, if evidenced by a writing; \* \* \*." (Ill. Rev.Stats.1973, ch. 74, § 4.)

As the court below pointed out:

"The statute is quite apparently designed to protect only relatively small, personal, non-business borrowers from high interest rates, and this exception speaks in very general terms as to various types of relatively liquid collateral security pledged for repayment of a loan over $5,000. While the collateral in the present case may not exactly be the ordinary certificates of stock or certificates of deposit in all respects and in a purely technical sense, any variance is not significant in view of the apparent purpose of the statute. There is simply no justification for a blindly technical reading of this exception in view of the general language used." 358 F.Supp. 892.

■■ We agree with this construction of the statute. As the plaintiffs admitted at the oral argument, on default the bank would obtain their entire savings and loan deposits and the cash surrender value of the life insurance policies. Surely this satisfies the purpose of the exception. It was not unreasonable to consider the savings and loan certificates as "certificates of stock" within Section 4(b). Cf. Tcherepnin v. Knight, 389 U.S. 332, 339, 88 S.Ct. 548, 19 L.Ed.2d 564. Since the cash surrender value of the insurance policies was withdrawable at any time by the policyholder, the district court was also justified in considering the policies to be equivalent to "certificates of deposit" within the meaning of the exception. Although plaintiffs argue to the contrary, the phrase "or other negotiable instruments" in Section 4(b) cannot mean that all the forms of collateral enumerated in the exception must be negotiable. For example, "certificates of stock" were normally not negotiable instruments before the enactment of the Uniform Commercial Code in 1961. Ill. Rev.Stats.1973, ch. 26, § 8–105. But the relevant language of the Section 4(b) exception has been essentially unchanged since 1929. Also, the absence of a comma before the phrase relied upon ties it to "bonds."

Because we hold the exception is applicable, we do not decide whether the district court properly held that the computation of interest on the basis of a 360-day year was here subject to the doctrine *de minimis non curat lex* and therefore not usurious. We do note that the Ninth Circuit recently held that interest computed on the basis of a 360-day year violated the Oregon usury law. American Timber & Trading Co. v. First National Bank of Oregon, 488 F. 2d 469 (9th Cir. 1973). The issue, in a related context, of using a 360-day year in computing interest in Illinois is presently pending in the Circuit Court of Cook County. See Perlman v. First National Bank of Chicago, 15 Ill.App.3d 784, 305 N.E.2d 236 (1st Dist. 1973); see also Comment, "Legal Aspects of the Use of 'Ordinary Simple Interest,'" 40 U.Chi.L.Rev. 141 (1973).

■ The district court also held that the action was not maintainable as a class action because the plaintiffs' claims were "possibly excepted" from the usury provisions and were therefore "atypical" (358 F.Supp. 891). Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiffs be "typical of the claims \* \* \* of the class." Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative. Cf. Muller v. Curtis Publishing Co., 57 F. R.D. 532 (E.D.Pa.1973), where a named

plaintiff was held an improper representative because he was the only class member not subject to an arguable defense. Had this case proceeded as a class action, much of the Kooses' effort would have necessarily been devoted to their own problems posed by the Section 4(b) defense; this may well have resulted in less attention to the issue which would be controlling for the rest of the class. A representative plaintiff should not be permitted to impose such a disadvantage on the class. Cf. Richardson v. Hamilton Int'l Corp., 62 F.R.D. 413 (E.D.Pa.1974). To the extent the holding in Mersay v. First Republic Corp., 43 F.R.D. 465 (S.D.N.Y.1968), is contrary, we disagree.

It seems prudent to indicate what this case does not hold. We are not concerned with defenses applicable to the class as a whole; there need be no preliminary showing that the class is likely to win before it can be determined whether a class action may be maintained. Nor are we concerned with Rule 23(a)(2) or 23(b)(3). We assume plaintiffs could have been a member of a class of all borrowers who paid 8% interest calculated on a 360-day basis, and could have intervened to litigate the Section 4(b) defense as a side issue for themselves or a subclass. But representative plaintiffs should not be distracted by a relatively unique personal defense. To the extent there are significant issues affecting only part of the class, the named representative should be in the larger part of the class.

For related reasons, plaintiffs have not satisfied the requirement of Rule 23(a)(1) that the class be "so numerous that joinder of all members is impracticable." It follows from what has been said that plaintiffs could represent only a class of borrowers who pledged collateral arguably within the exception. Since there were no allegations in the complaint as to the size of such a class, the district court was within its discretion in determining that the action was not to be maintained on behalf of any such class.

In Perlman v. First National Bank of Chicago, *supra*, the Appellate Court of Illinois permitted the suit to proceed as a class action. But that suit was brought under Ill.Rev.Stats.1973, ch. 74 §§ 9, 10, governing the construction of contracts for the payment of interest. Those Sections apply to all loans without exception, so that the issue before us did not arise. In any event, the court there stated that the Illinois class action rule was not identical to Federal Rule 23. 15 Ill.App.3d 804, 305 N.E.2d 236. In the *American Timber* case, no class action issues were before the court of appeals. 488 F.2d 471, n. 2. Accordingly, nothing in those cases either supports or conflicts with the result reached here.

Judgment affirmed.