**Hymen P. GOLDWATER, Plaintiff,**

v.

**ALSTON & BIRD, Price Waterhouse, Centerre Trust Company, Centerre Bancorporation, Hospital Management Associates, Inc., (HMA) and H.M.A., Inc., the Jones, Bird & Howell Partners, Jones, Bird & Howell and Peter Wright, Jack Hereth, Futra Industries, Inc., and Hereth Jones, Inc., Gallop, Johnson & Newman and J. Neil Huber, Donald Gallop, Allan Johnson, Sanford, Newman, Thomas Lewin, P. Terence Crebs, and Stephen Rovak, Mt. Vernon Hospital, Inc., Jefferson County Health Facilities Authority, Inc., Michael A. Alexander, Robert O. Kent, Kenneth Martin, Jr., William D. Thackery, Floyd Collins and Max W. Schurtz, Peter Orr, Defendants.**

Civ. No. 85–4302.

United States District Court,
S.D. Illinois,
Benton Division.

June 29, 1987.

See also 664 F.Supp. 403.

G. Keith Phoenix, Kenneth W. Bean, Robert Ritter, Paul C. Hetterman, St. Louis, Mo., R. Alan Stotsenburg, David C. Harrison, Donna Glasgow, New York City, for plaintiff.

Mary Bonarcorsi, W. Stanley Walch, St. Louis, Mo., Lawrence A. Farese, Cummings & Lockwood, Naples, Fla., Joseph R. Davidson, Granite City, Ill., Peter J. Anderson, Kirk McAlpin, Atlanta, Ga., R.W. Wilson, Edwardsville, Ill., Barry Short, Daniel Claggett, Michael Vitale, St. Louis, Mo., Richard Boyle, Belleville, Ill., Paul D. Giamanco, Mt. Vernon, Ill., Al J. Pranaitis, Alton, Ill., Rebecca Jackson, David Slavkin, Frederick H. Mayer, Timothy K. Kellett, St. Louis, Mo., James Spiotto, Rick Bailey, Chapman & Cutler, Chicago, Ill., William Cobb, H. Marshall Korschun, Atlanta, Ga., Michael Pitzer, John Cunningham, Brown, James & Rabbitt, P.C., Mark G. Arnold, St. Louis, Mo., for defendants.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on plaintiff Hymen P. Goldwater's Motion for Class Certification (Document No. 11, Cause No. 85–4252) and intervenor/plaintiff William F. Dalton's Renewal of Motion to Certify Class (Document No. 277, Cause No. 85–4302). Both sides have extensively briefed the issue of certification,[1] and an evidentiary hearing was held at which oral argument of counsel was heard. For the reasons set forth below, the Court grants plaintiffs' motion.

## PROCEDURAL HISTORY

Because the original Motion for Class Certification was filed in a suit initiated in Hawaii and was later renewed in a separate suit initiated in this district, the Court finds it appropriate to briefly review the case's somewhat ponderous procedural history at this juncture.[2]

Plaintiff Goldwater initially filed this suit in the United States District Court for the District of Hawaii on June 29, 1984.[3]

---

1. The Court notes that over 200 pages of briefs were filed on the class certification issue alone.

2. At this writing, the case is docketed under two separate cause numbers comprising some 13

volumes containing 344 separately filed pleadings.

3. *Goldwater, et al. v. Alston & Byrd, et al.,* Cause No. 84–0733.

Thereafter, the district judge orally dismissed the complaint as to certain defendants.[4] Goldwater then filed suit in this district's Alton Division against the defendants dismissed-out in Hawaii and also added several new defendants.[5]

In April of 1985, the Hawaii action was transferred to this district's Benton Division by consent of the parties and given cause number 85–4252. Sometime later, the Alton case was also transferred to the Benton Division and assigned cause number 85–4302. At this point, the Court decided to consolidate the two actions and, pursuant to that decision, ordered the plaintiff to file a consolidated complaint. The First Consolidated Complaint was filed by plaintiff on May 21, 1985, and assigned the same number as that of the previously filed Alton action, 85–4302.

In July of 1985, this Court entered an order deeming plaintiffs' Motion for Class Certification, originally filed in the Hawaii proceedings, resubmitted.[6] Additionally, all discovery was stayed pending the Court's ruling on the class certification motion and all outstanding discovery requests were ordered to be responded to within 30 days of the Court's ruling on class certification.[7]

Approximately six months after this last order, it became apparent that plaintiff Goldwater was physically unable to function as class representative and thereafter in January of 1986, plaintiff William F. Dalton sought and obtained leave to file a Complaint in Intervention.[8] This complaint was filed December 12, 1986.[9] On April 29, 1987, the Court held an evidentiary hearing at which oral argument was heard on the motion for class certification and at which plaintiff Dalton filed his *Intervenor Plaintiff's Renewal of Motion to Certify Class* (Document No. 277, Cause No. 85–4302).

In sum, this case has been pending for nearly three years with discovery stayed and the class certification motion pending while the parties hotly contested each other's dilatory motions. The Court has carefully considered the argument of counsel and read and reread the briefs, answering briefs, and reply briefs submitted by the parties. Almost by definition, class action litigation is complex. When it involves a bond fraud such as the one alleged here, it becomes even more complex. The cases proferred by the parties clearly recognize however that the class action vehicle is an appropriate tool for the resolution of securities fraud cases and the Court believes the instant one to not be appreciably different from those cited to it both in favor of, and in opposition to, the motion for class certification.

## DISCUSSION

■ The Court notes at the outset of this discussion that much attention was given to issues such as the statute of limitations, likelihood of success on the merits, anticipated defenses, and the like, in both plaintiffs' and defendants' briefs and in oral argument. However, in determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey International*, 452 F.2d 424, 427 (5th Cir.1971)). Thus, while the Court recognizes the importance of the above-described issues as they relate to the commonality and typicality requirements of Rule 23(a) and the predominance considerations of Rule 23(b)(3), they must

---

**4.** This apparently occurred in early November, 1984.

**5.** *Goldwater, et al. v. Alston & Byrd, et al.,* Cause No. 84–5487, (So.Ill., Alton Div.).

**6.** See *Order* entered July 26, 1985, at page 1–2.

**7.** *Id.* at page 2.

**8.** This apparently occurred in early November, 1984.

**9.** See *Hymen P. Goldwater, Plaintiff and William F. Dalton, individually and as representatives of a bondholder class v. Alston & Byrd, et al.,* No. 85–4302, Complaint in Intervention.

be evaluated in light of *Eisen v. Carlisle & Jacquelin, supra,* in determining whether the requirements of Rule 23 F.R.Civ.P. are met.

Rule 23 has two parts: subpart (a) requires (1) that the class be so numerous that joinder of all members is impracticable, (2) that there be questions of law or fact common to the class, (3) that the claims or defenses of the representative parties be typical of the claims or defenses of the class, and (4) that the representative parties will fairly and adequately protect the interests of the class; subpart (b) requires that for a suit to be maintained as a class action, the prerequisites of subpart (a) must be met and additionally the conditions of at least one of three additional restrictive classifications must be present. Rule 23, F.R.Civ.P. In this case, the plaintiff seeks certification pursuant to Rule 23(b)(3) which requires that the Court find:

The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23(b)(3), F.R.Civ.P.

For organizational purposes, the Court will adopt the form of the rule for its analysis.

## NUMEROSITY

■ As previously noted, Rule 23(a)(1) requires that the class be so numerous that joinder of all members be impracticable. In this case plaintiffs have asserted that there exist some 426 class members [10] and defendants assert that there are some 900.[11] The complaint defines the class as:

All persons (other than defendants) who purchased Jefferson County Health Facilities Authority, Inc. First Mortgage Facilities Revenue Bonds, dated August 19, 1980, (the bonds, or the bond issue) prior to their default in February, 1982.[12]

Defendants have never challenged the numerosity requirements fulfillment, and given the size of the class, this Court finds that joinder of all members would be impracticable. Therefore, the Court holds that the requirements of rule 23(a)(1) have been met.

## COMMONALITY

■ Rule 23(a)(2) requires that questions of law or fact common to the class be present in order to maintain a class action. Rule 23(a)(2), F.R.Civ.P. However, this provision does not require that all the questions of law or fact raised by the dispute be common. 7A, C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure: Civil § 1763* (1986). *See also, Weiss v. York Hosp.,* 745 F.2d 786, 809 (3rd Cir. 1984); *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982); *Johnson v. American Credit Co. of Georgia,* 581 F.2d 526, 532 (5th Cir.1978); *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1334 (8th Cir.1974). But, 23(a)(2) *does* require that there be at least one issue whose resolution will affect all or a significant number of the putative class members.[13]

To properly meet the commonality requirement, plaintiffs must make a specific presentation identifying the questions of law or fact that are common to the claims of the class representative and the rest of

**10.** *Complaint in Intervention,* p. 10.

**11.** At the April 29, 1987 hearing, counsel for defendant Price-Waterhouse stated that the records of the trustee indicated this figure.

**12.** *Complaint,* supra, p. 1.

**13.** *Stewart v. Winter,* 669 F.2d, at 335.

the class. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982).

■ Plaintiffs allege violation of the Securities Exchange Act, § 10(b) and Rule 10b–5, fraud on the market (the *Shores* theory),[14] negligence, and a RICO claim in their Complaint in Intervention, identifying the following as common questions of fact:

a. existence of a common plan, scheme, conspiracy or course of conduct to issue and sell the bonds;

b. whether defendants, pursuant to their fraudulent scheme, intentionally and/or recklessly failed to disclose material facts to purchasers of the bonds;

c. whether the omissions were material;

d. whether bond counsel's opinions falsely stated that the bonds were tax-exempt, which constitutes additional primary securities fraud violations;

e. whether the bonds would have been issued and marketed if the true facts had been disclosed to the public;

f. whether intervenor plaintiff and the other bondholders have been damaged.[15]

These common issues were also identified in plaintiff Goldwater's Motion for Class Certification,[16] and the Court therefore finds that the requirement of *General Telephone, supra,* mandating specific presentation of the questions that are common, has been met.

The defendants claim that plaintiff Dalton's claims are not common to the class for two main reasons: (1) he never received or read the offering statement, and thus cannot be said to have relied on it, and, (2)

his claim that the bonds are not tax exempt is not common to the rest of the class for the reason (defendants assert) that such a claim, if successful, would probably expose the rest of the class to tax liability on the interest payments they did receive.

## THE RELIANCE ISSUE

The defendants contend that the issue of reliance is critical to plaintiffs' claims and fatal to intervenor Dalton's claims, thereby destroying the commonality needed by Dalton to represent the putative class. This conclusion is arrived at by the defendants because Dalton never received an offering statement[17] and admitted in deposition testimony that he relied on his broker's recommendations in deciding to purchase the bonds.[18] Because reliance is a factor in both the Rule 10b–5 claim and the *Shores* claim, the Court will address the two separately.

*Reliance in 10b–5 claims:*

■ Liability for fraudulent acts under Rule 10b–5 can be established in several ways:

1. by conduct of a fraudulent scheme or course of business [Rule 10b–5, clauses 1 and 3];[19]

2. by making a misrepresentation [Rule 10b–5, clause 2];

3. by making a statement which would be misleading unless additional facts were provided [Rule 10b–5, clause 2].

The defendants contend that Dalton's 10b–5 claim fails because he alleges that the offering statement contained material misrepresentations, when in fact he could not have relied upon the misrepresentations made therein because he never re-

---

**14.** The fraud on the market theory of recovery is a Rule 10b–5 based theory first enunciated in *Shores v. Sklar,* 610 F.2d 235 (5th Cir.1980), *opinion adhered to on rehearing,* 647 F.2d 462 (5th Cir.1981) (en banc); *cert. denied,* 459 U.S. 1102, 103 S.Ct. 722, 74 L.Ed.2d 949 (1983).

**15.** *Complaint in Intervention,* p. 11.

**16.** Motion for Class Certification (Cause No. 85–4252), p. 7–8.

**17.** Dalton deposition, p. 563.

**18.** *Id.* at 561–62.

**19.** *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Strong v. France,* 474 F.2d 747 (9th Cir.1973).

ceived the offering statement. Thus, defendants reason, Dalton's claim is not common because he, unlike most if not all of the rest of the class, did not receive or rely on the offering statement which allegedly contains the misrepresentations.

What the defendants seem to miss however, is that Dalton has alleged that the offering statement is, itself, only one part of a much larger fraudulent *scheme,* and that the alleged misrepresentations and omissions complained of are in reality manifestations of this scheme. In other words, they are but trees in the fraudulent forest. This distinction is critical because it is the *scheme* that is common to Dalton and his fellow class members, and the scheme *is* actionable under Rule 10b–5.

The Supreme Court, in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 152–53, 92 S.Ct. 1456, 1471–72, 31 L.Ed.2d 741 (1972) expressly rejected the notion that there must be reliance on a material fact misrepresentation in order to state a Rule 10b–5 claim when they held:

> We do not read Rule 10b–5 so restrictively. To be sure, the second subparagraph of the rule specifies the making of an untrue statement of a material fact and the omission to state a material fact. *The first and third subparagraphs are not so restricted.* These defendants' activities ... disclose, within the very language of one or the other of those subparagraphs, a "course of business" or a "device, scheme or artifice" that operated as a fraud upon the [plaintiffs].

[Emphasis added.]

In the case at bar, plaintiff Dalton has alleged a fraudulent scheme, and while the Court does not reach the merits of the claim, it is obvious that Dalton and the other class members have a common *Shores* claim in which the issue of reliance on the offering statement is immaterial. For this reason, whether or not Dalton received, read, or relied upon the offering statement is of no relevance in determining the commonality of the class' *Shores* claim with his own.

*Reliance in "Shores" claims:*

■ As previously stated, *Shores v. Sklar, supra,* established a theory of recovery based on a fraud on the market. That is to say that the bonds themselves were fraudulently placed on the market. *Shores,* as does this case, involved tax-exempt revenue bonds. Generally speaking tax-exempt bonds are considered to be comparatively safe (low risk) speculative investments. Thus, issuing bonds which are not only *not* tax-exempt but also highly speculative (high risk) on a market historically considered a low risk, tax-sheltered one, may be considered a fraudulent offering under *Shores* because they were not entitled to be marketed in that particular market at all. As the *Shores* court stated:

> This theory is not that [the plaintiff] bought inferior bonds, but that the bonds he bought were fraudulently marketed. The securities laws allow an investor to rely on the integrity of the market to the extent that the securities it offers to him for purchase are entitled to be in the market place.

*Shores v. Sklar, supra,* 647 F.2d at 471.

■ The defendants contend that Dalton, having received his information about the bonds from his broker [20] and by virtue of being a somewhat sophisticated investor, did not rely on the market in deciding to purchase the bonds. However, Dalton's deposition, when fairly read, indicates that he apparently did rely on the market in making his decision to purchase. Mr. Dalton stated that he believed the primary risk factor would be *market* risk of interest rate movement.[21]

While it is true that *Shores* requires a reliance on the market, the Court, upon reading Dalton's deposition testimony, does not believe that it shows he did *not* rely on the market. To the contrary, it shows that he was a cautious investor and that the apparent reason he purchased the bonds

---

**20.** Dalton Deposition, supra, at 39–40, 561–62.

**21.** *Id.* at 580.

was due to his belief that they were "safe" investments by virtue of being on the tax exempt bond market. Defendants urge that because he communicated with his broker and because he made certain assumptions contrary to what was allegedly disclosed in the offering statement, Dalton did not rely upon the market. Both of these contentions emanate from Dalton's allegations concerning misrepresentations and omissions in the offering statement.

In reversing the district court's dismissal of the plaintiffs' rule 10b–5, (1) and (3) claims in *Shores, supra,* the Fifth Circuit held:

> The district court erred, however, in construing the remainder of Bishop's complaint as narrowly confined to charges of misrepresentations and omissions in the Offering Circular that would have defrauded investors who did rely. It would permit proof that the defendants engaged in an elaborate scheme to create a bond issue that would appear genuine but was so lacking in basic requirements that the Bonds would never have been approved by the Board nor presented by the underwriters had any one of the participants in the scheme not acted with intent to defraud or in reckless disregard of whether the other defendants were perpetrating a fraud. *Rather than containing the entire fraud, the Offering Circular was assertedly only one step in the course of an elaborate scheme.*

*Shores, supra,* 647 F.2d at 468. [Emphasis added.]

Thus, the offering statement and its attendant alleged misrepresentations, omissions and disclosures, is not central to stating a *Shores* claim.

Dalton must only allege and be able to prove a scheme to defraud or, an act, practice or course of business which operates as a fraud or deceit upon him in connection with the sale of the bonds.[22] It is this scheme or course of business which must be a common issue to Dalton and the putative class he seeks to represent for Rule 23 purposes, and while the defendants make several salient points, this Court finds that these are more appropriately directed to the merits of the case. As such, under *Eisen, supra,* they are not reached in deciding Dalton's Rule 23 motion.

Upon giving plaintiffs' pleadings and deposition a fair reading, the Court concludes that while there may be some sub-issues not common to Dalton and the class, on the whole, the fraudulent scheme alleged *is* common to both him and the class he seeks to represent and, as such, fulfills the requirement of Rule 23(a)(2) requiring common issues of fact or law.

### THE TAX EXEMPTION ISSUE

The defendants also contend that Dalton's (and Goldwater's) allegation that the bonds as issued were not tax exempt is atypical of the class claims and thus do not present a "common" issue for Rule 23 purposes.[23] As previously noted however, Rule 23(a)(2) does *not* require that *all* the questions of law and fact raised by the dispute be common.[24] In this case the Court feels that the tax exemption issue *is* common to Dalton and the putative class because of its place in the overall scheme alleged by the plaintiff. It is apparent that Dalton's (and Goldwater's) claim that the bonds were not tax exempt at the time of issue is part and parcel of their *Shores* claim. Namely, that it is fraudulent conduct to offer and sell *non*-tax exempt bonds on the tax exempt bond market in light of purchasers relying on their tax exempt classification as an inducement to purchase them. Therefore, the issue is one common to the entire class. Tax liability notwithstanding, such a question is sufficiently common to the class to meet the requirements of Rule 23(a)(2).

---

22. *Shores,* supra, at 469.

23. *Joint Brief of Defendants* (Document No. 258), p. 41–43.

24. 7A, C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure:* Civil § 1763 (1986).

*The "State Law" claims:*

■ Again, defendants urge this Court to deny certification because both Goldwater and Dalton have alleged common law negligence and breach of contract claims against certain defendants. While it may well be that these are indeed pendent claims, it is hard to conceive that they do not present common questions of law or fact with respect to Dalton and the putative class. For example, plaintiff Dalton alleges that the bond counsel defendants owed a duty to himself and the bondholder class to exercise due care in discharging their obligations as bond counsel, and that this duty was breached by virtue of their making material misrepresentations about the bonds in their opinion letter.[25] Additionally, it is asserted that bond counsel breached its alleged contractual duty to the bondholders in failing to investigate the "bona fides" of the bonds.[26]

While these contentions may or may not have legal merit, they are indeed "common" questions to all the plaintiffs and are alleged as such. It is true that these are state law based claims, but this Court may exercise pendent jurisdiction where the state and federal claims derive from a common nucleus of operative fact.[27] Of course, pendent jurisdiction is discretionary, but it may be asserted in appropriate cases provided that the pendent claim really is the pendant of some colorable federal claim.[28]

Here, the common nucleus of operative fact is the alleged fraudulent scheme which resulted in the sale of the bonds to the plaintiffs. It is also true that there exists a colorable federal claim (Rule 10b–5(1), (3)). Thus, under *U.M.W. v. Gibbs*, supra, and *Graf*, supra, this Court may assert pendent subject matter jurisdiction. Accordingly, because the claims evolve from the alleged *scheme* and because they are asserted on behalf of all the plaintiffs, the Court finds that they satisfy the commonality requirements of Rule 23.

## TYPICALITY

Rule 23(a)(3) requires that the claims of the class representative be typical of those to be asserted on behalf of the putative class. The Seventh Circuit has held that the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of the other class members. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983).

*De La Fuente*, supra, held that:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.

713 F.2d at 232, (quoting H. Newberg, *Class Actions*, § 1115(b) (1977)).

In the case at bar, there is no doubt that Dalton's claims arise from the same event and course of conduct; namely the sale of the bonds to plaintiffs and the alleged fraudulent scheme employed by the defendants to induce the bonds placement and sale in the tax exempt securities market.

■ Both Dalton's and the class' claims involve Rule 10b–5 causes of action and alleged RICO violations, and as such, involve the same legal theories. In deciding if those claims are "typical," this Court must focus on whether Dalton's claims have the same essential characteristics as the claims of the class at large.[29] The essential characteristics of Dalton's claims are identical to those of the class he seeks to represent. They both involve the same legal theories even though defendants contend that there are factual differences; but

---

**25.** *Complaint in Intervention,* pp. 30–31.

**26.** *Id.* at 32.

**27.** *See, United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**28.** *Graf v. Elgin, Joliet and Eastern Ry. Co.,* 790 F.2d 1341, 1347 (7th Cir.1986).

**29.** *De La Fuentes,* supra, at 232.

similarity of legal theory may control even in the face of differences of fact.[30]

Finally, the defendants urge that because Dalton's claims are subject to unique defenses (non reliance on the market and reckless disregard of the offering statement) they are atypical and therefore he is not a proper class representative. To support this proposition, the defendants cite *Koos v. First National Bank of Peoria,* 496 F.2d 1162 (7th Cir.1974), and, *J.H. Cohn & Co. v. Am. Appraisal Assoc., Inc.,* 628 F.2d 994 (7th Cir.1980).

*Koos* held that where it is predictable that a major focus of the litigation will be on arguable defenses unique to the named plaintiff or a small subclass, the named plaintiff is not a proper class representative.[31] *Cohn,* following the court's earlier pronouncement in *Koos,* held that the presence of even an arguable defense peculiar to the named plaintiff *may* destroy the required typicality of the class claim as well as bring into question the adequacy of the named plaintiffs' representation.[32] The defendants would urge this Court to read *Koos* and *Cohn* as standing for the proposition that the presence of arguable defenses *does* destroy typicality, not that it *may.* A thorough reading of *Cohn,* however, suggests that such an interpretation goes beyond that court's holding.

*Cohn* explains the rationale behind the court's holding is, "... the fear that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer."[33] Thus, it appears the determination to be made by this Court is whether the presence of the so-called "unique" defenses is of sufficient dignity to foreshadow the denigration of Dalton's representation of the class. The "unique" defenses the defend-

ants propose to assert are: (1) that Dalton relied on the representations of his broker rather than on the integrity of the market, (2) that he "recklessly disregarded" the contents of the offering statement, and, (3) that his claim is barred by the statute of limitations. As will be seen, none of these defenses are truly unique to Dalton to the extent that they would likely cause Mr. Dalton's representation of the rest of the class to suffer.

■ The first defense, reliance on the broker rather than the market, again brings out the reliance issue. Here, defendants claim that Dalton's admission on deposition that he got his information about the bonds from his broker shows that he did not rely on the market in making his decision to purchase the bonds. The Court believes that this is not necessarily a logical conclusion to reach, for as plaintiff aptly notes, it is virtually impossible to find a stock transaction that does not involve some communication with one's broker. Furthermore, Dalton also testified that "they [the bonds] were purchased *primarily because they were tax free bonds* that I thought gave a good yield."[34] Thus, it would be manifestly unjust to construe Mr. Dalton's testimony, especially at this stage of the litigation, as demonstrating lack of reliance to the point that it would be fair to characterize him as subject to a "unique defense." In fact, there may be other plaintiffs in the class who also spoke with their brokers or even read the offering statement. For this reason, the Court sees nothing unique about this defense. If it is an issue as defendants contend, it is one that may well apply to each class member.[35]

Indeed, to deny class certification based upon a fine-line assessment of reliance in terms of each plaintiff's respective situa-

---

**30.** *De La Fuentes,* supra, *id.* (Citing *Donaldson v. Pillsbury Co.,* 554 F.2d 825 (8th Cir.1977)); *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

**31.** *Koos,* supra, at 1164.

**32.** *Cohn,* supra, at 998–999.

**33.** *Cohn,* supra, at 999.

**34.** Dalton deposition, at p. 70.

**35.** *See Ridings v. Canadian Imperial Bank of Commerce Trust Co.,* 94 F.R.D. 147, 151 (N.D.Ill. 1982).

tion would constitute too much an excursion into the merits of the case,[36] and thus would be contrary to the Supreme Court's holding in *Eisen v. Carlisle & Jacquelin, supra.*

As for the "unique" defenses of reckless disregard of the offering statement and the statute of limitations, this Court finds nothing "unique" about these defenses either. To the contrary, the Court fully expects vigorous assertion of these defenses against all of the class members. For these reasons, the Court does not believe that they will preoccupy its time or the named plaintiffs' time at the expense of the rest of the class. Thus, the fear expressed by the Seventh Circuit in *Cohn,* supra, has been allayed. Accordingly, it seems apparent that the typicality requirement of Rule 23(a)(3) has been met.

## ADEQUACY OF REPRESENTATION

■ Rule 23(a)(4) requires that the Court find that the representative parties will fairly and adequately protect the interests of the class. Adequate representation depends on two factors: (1) The plaintiffs' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (2) The plaintiff must not have interests antagonistic to those of the class.[37] Furthermore, whether a party would adequately protect the interests of the class is a question of fact depending on the circumstances of each case.[38]

■ In the instant case, plaintiffs' lead attorney has extensive experience in conducting securities fraud class action suits. As a lawyer specializing in securities law (even to the point of teaching it at two different law schools) for some 25 years, he appears to be eminently qualified and able to conduct this litigation. While

the defendants make much to-do about Mr. Dalton's lack of knowledge about the legal theories involved in his case, this Court finds those contentions non-dispositive at best and irrelevant at worst. As the court noted in *Grossman v. Waste Management Inc.,*[39]

> One cannot expect an ordinary owner of stock to know the basics of a potential securities fraud claim before going to a lawyer; rather, in most cases, it is likely that the plaintiff will only know that [they] have been wronged in some manner. It is not unreasonable to permit such a person to leave it up to [their] lawyer to put flesh on the bare bones of [their] claim.

*Grossman,* 100 F.R.D. at 792.

This case has been hotly contested from the outset and the defendants' complaints about Mr. Dalton's demeanor during their deposition of him indicates that atmosphere and nothing more. It is not difficult to imagine a layman being deposed by at least a half dozen highly experienced, antagonistic attorneys on a subject that he is only vaguely familiar with (i.e., the elements of a securities fraud), becoming somewhat recalcitrant. While this Court does not condone Dalton's actions, given the nature and duration of the deposition, it in no way convinces the Court that he will not be an adequate representative.[40]

The next determination the Court must make is whether plaintiff Dalton's claims are antagonistic to those of the rest of the class.[41] With respect to this determination, the defendants' sole contention is that Dalton's claim that the bonds were not tax exempt is manifestly antagonistic because an affirmative finding on this point could potentially subject the entire class to tax liability on the interest they received but

---

**36.** *Hochschuler v. G.D. Searle & Co.,* 82 F.R.D. 339, 345 (N.D.Ill.1978).

**37.** *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir.1977) (quoting *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3rd Cir.1975) *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679.)

**38.** *Susman,* supra, at 90.

**39.** 100 F.R.D. 781 (N.D.Ill.1984).

**40.** The deposition took three full days and resulted in a transcript comprising over 600 pages.

**41.** *Susman,* supra, *id.*

did not declare. This argument is wholly specious.

 Class certification should be denied on the basis of antagonism only if that antagonism goes to the subject matter of the litigation.[42] In the case at bar, fraudulent marketing of bonds is the subject matter of the litigation. The tax exempt status of the bonds is an integral part of the fraudulent marketing scheme because they were sold in the tax exempt bond market. Thus, Dalton's tax exemption claim is *not* antagonistic to the subject matter of the litigation; it is in fact complimentary to it. The antagonism, if any, lies in the result of successful prosecution of the case, and this Court cannot state that potential tax liability presents an antagonistic interest that defeats Dalton's claim of being an adequate representative for the putative class.[43] For these reasons the Court finds that Dalton will adequately represent the putative class, and thus the requirements of Rule 23(a)(4) have been met.

In sum, the Court finds that plaintiff Dalton has met all the requirements of Rule 23(a), F.R.Civ.P. It next addresses whether this action is maintainable under the provisions of Rule 23(b)(3).

### RULE 23(b)(3)

As previously stated, in order to maintain a class action the party seeking certification must not only meet the requirements of Rule 23(a), but must also meet the requirements of one of the subsections of Rule 23(b).[44] The plaintiff/intervenor and the original plaintiff both seek certification pursuant to subsection (3) of the rule which requires that this Court find that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[45]

 In making these determinations the Court is to consider the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in this forum; and the difficulties likely to be encountered in the management of a class action.[46]

The Seventh Circuit has indicated that in considering the predominance question the Court is to: (1) analyze the substantive elements of plaintiffs' cause of action and inquire into the proof necessary for the various elements and, (2) inquire into the form that the trial on these issues would take.[47] In this case, Dalton must show (1) that the defendants caused the securities to be brought onto the tax exempt bond market knowing that they were not entitled to be marketed, intending to defraud purchasers, (2) that he reasonably relied on the bonds availability on the market as an indication of their apparent genuineness, and (3) as a result of the scheme to defraud, he suffered a loss.[48] The proof required to make these showings will necessarily be common to all class members except as to damages, and thus will predominate over the individual damages issues.

---

**42.** *Riordan v. Smith Barney,* 113 F.R.D. 60, 64 (N.D.Ill.1986).

**43.** This necessarily is true for two reasons: (1) Defendant's contention *assumes* that the other class members would not join in this claim and there is absolutely no proof of the validity of this assumption, and (2) it also assumes that the other class members would be less likely to risk exposure for the tax liability they may incur on the meager interest payments they actually received than they would be to sue for the thousands of dollars they actually lost. This assumption seems wholly illogical.

**44.** Rule 23(b), F.R.Civ.P.

**45.** Rule 23(b)(3), F.R.Civ.P.

**46.** *Id.*

**47.** *Simer v. Rios,* 661 F.2d 655, 672 (7th Cir. 1981).

**48.** *Shores v. Sklar,* 647 F.2d 462, 469–70 (5th Cir.1981).

With respect to the first element, Dalton must prove that the defendants knew that the bonds, as issued, were not entitled to be marketed on the tax exempt bond market. This obviously will be an issue common to all members of the class and will certainly predominate over any individual issues. As to the intent aspect (i.e., whether the defendants intended to defraud the plaintiff), this too will be an issue common to all the class members, making it a predominant class issue as well.

The second element, whether the plaintiff reasonably relied on the integrity of the bond market as an indicia of the bonds genuineness, is somewhat problematic. It necessarily is an individual issue which will require factual determinations as to each of the class members. However, the Court, for Rule 23(b)(3) purposes, finds that this is an issue common to all class members and therefore is one which will predominate. While it is true that it creates a manageability problem by virtue of requiring separate findings of fact, the Court believes that it does not pose an insurmountable problem.[49] Furthermore, the use of separate trials on individual issues of fact should not be an absolute bar to the use of the class action device.[50]

The final element, whether plaintiff suffered a loss as a result of the scheme to defraud, is also an issue common to all class members, and as such will predominate. It, like the second element, is more a manageability problem than a predominance question. The Court finds that the issues raised by this element meet the requirements of the predominance mandate of Rule 23(b)(3). While the proof of actual damages will require individual findings of fact, proof of whether or not the loss was caused by the scheme to defraud will not.

Proof of the damages suffered by the individual class members can easily be ascertained by determining how much each member invested and deducting how much each received in return for the investment.

As for the pendent common law claims of negligence and breach of contract, the Court finds that these too are common issues that will predominate. As for negligence, the elements of course would be (1) the existence of a duty, (2) whether defendants breached this duty, (3) whether the breach was a proximate cause of plaintiffs' injuries, and (4) whether plaintiff was in fact injured. The breach of contract claim elements would consist of (1) whether there existed a contract between the plaintiffs and defendants, (2) whether defendants breached that contract and, (3) whether plaintiffs suffered damages as a result of the breach.

The defendants assert that the individual elements of these two claims will depend upon the state law of the various states in which each class member is domiciled. However, the Court believes the only elements that may markedly differ are the existence of a duty (in the negligence claim) and the existence of a contract (in the contract claim). That situation notwithstanding, the Court finds that the proof required to establish these elements, for the most part, will be common to all plaintiffs. If there do exist material variances in the elements noted above in the different states, the Court may either decertify these claims or decertify sub-classes of plaintiffs who live in states which do not impose the duty or recognize the existence of a contract.[51] Having thus analyzed the proof necessary to establish the various elements, the Court, in light of *Simer v. Rios, supra,* now analyzes the form the trial will take. Since this inquiry necessar-

---

**49.** It should be noted that this issue may never even be reached, especially if the jury finds that there was no intent to defraud and no actual fraud in marketing the bonds. Additionally, should an affirmative finding on fraud be made, the reliance issues could easily be referred to magistrates, or as has been done in similar cases, to special masters.

**50.** *Simer v. Rios,* supra, 661 F.2d at 674.

**51.** This of course is permitted by Rule 23(c)(1), F.R.Civ.P.

ily overlaps with the requirement of 23(b)(3) that the Court find that a class action is superior to other available methods of adjudicating the controversy, the two will be discussed together.

■ As the Supreme Court has noted: Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages aggrieved persons may be without any effective redress unless they may employ the class-action device.[52]

In this case, the Court finds the above-quoted passage very apropos. Here are approximately 900 small investors, many apparently retired, who have invested their savings in what they thought must have been a secure investment—tax exempt bonds. Some invested relatively small amounts[53] and some rather substantial amounts.[54] It is obvious that many of the smaller investors could not afford to sue most, if not all, of the defendants in this case individually, thus to deny class certification would effectively deny most of the people who collectively lost millions of dollars a remedy. Otherwise, assuming the class members could afford it, there could be hundreds of individual suits most with duplicitous discovery, thus adding to overall cost of the litigation. Also, because most of the actions complained of took place in this district and because the facility itself is located here, the Court believes this district is the most appropriate forum. For these reasons, the Court finds that a class action is a superior device for litigating plaintiffs' claims.

As for the shape the trial will take, it will be somewhat complex, but as noted at the beginning, securities fraud cases are usually complex. The Court expects to bifurcate the trial into liability and damage phases and may even try certain elements of the claims separately as was suggested with the fraud element of plaintiffs' *Shores* claim. In any event, the Court finds that while it may be a long and difficult process, it can be managed.

Finally in considering the factors mandated by Rule 23(b)(3) previously set forth, the Court finds that there could be little interest of individual class members in individually controlling the prosecution of this case. Indeed, as previously noted, the cost of individual prosecution would far exceed the amount to be recovered in most instances.

Additionally, there appears to be no other litigation involving this matter pending. A declaratory judgment action was filed as a class action by defendant Centerre Trust in an Illinois state court which did not involve any declaration of liability on any of the defendants' part. Rather, it sought judicial sanction of the sale of the facilities by Centerre as trustee. The case has since been closed.

For these reasons, plaintiffs' Motion for Class Certification (Document No. 11, 85–4252; Document No. 277, 85–4302) is hereby GRANTED.

Accordingly, the following is ORDERED:

1. The motion for class certification is GRANTED. The Court has determined that the action may properly be maintained as a class action on behalf of the following class:

All persons (other than defendants) who purchased Jefferson County Health Facilities Authority, Inc. First Mortgage Medical Facility Revenue Bonds (Mt. Vernon Hospital, Inc.), dated August 19, 1980 (the bonds or the bonds issue) prior to their default in February, 1982.

2. Plaintiff William F. Dalton is appointed class representative.

3. The law firms of R. Alan Stotsenburg, P.C., Shepherd, Sandberg & Phoenix,

---

**52.** *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed.2d 427 (1980).

**53.** Plaintiff/Intervenor Dalton apparently invested $5,000.00

**54.** Plaintiff Goldwater invested around $20,-000.00.

P.C. and Gray & Ritter are designated general counsel for the class.

4. Within 10 days after entry of this order all defendants shall serve upon plaintiff a list of the names and last known addresses of all members of the class to the extent any such list is within his or its possessions, custody or control. To the extent such a list is not so available, the defendants shall make available to plaintiff for inspection records within defendants' possessions, custody and control from which plaintiff may prepare a class list.

5. Plaintiff shall promptly prepare or obtain a class list.

6. A notice of class determination in the form attached as Exhibit A shall be mailed by first class mail, postage prepaid, to each member of the classes at the address shown on the class list. The date to be inserted on page four as the deadline for mailing requests for exclusion shall be 90 days from the date of mailing.

7. All costs related to the giving of notice, including the costs of printing, stuffing and mailing of individual notice shall be paid by plaintiff and treated as a cost of this action.

8. Any class member who desires to be excluded from such class must mail to the Court a written request for exclusion, postmarked not later than the date inserted on page four of Exhibit A, which shall be 90 days from the date of mailing. Any person who files a timely request for exclusion shall be excluded from the class and will not be entitled to share in the benefits of the judgment in this action if favorable to the plaintiff and will not be bound by the judgment in this action if adverse to the plaintiff.

9. Plaintiff shall file a declaration or affidavit of proof of service by mailing as directed by this order. Plaintiff shall inform the Court the extent to which the members of the class have received notice of mailing, and whether additional notice is required.

10. The notice to be given to members of the class as directed by this Order is the best notice practicable for purposes of Rule 23(c)(2) of the Federal Rules of Civil Procedure. The Court reserves the possibility of additional notice, such as by publication.

11. In view of the foregoing memorandum and order, the parties are hereby notified to appear for a scheduling conference on July 14, 1987 at 9:30 a.m. in Benton, Illinois.

IT IS SO ORDERED.